# ;WARDER *v.* NEWBURGH.

CHAMPERTY; DEED; EFFECT.

1. A deed tainted with champerty is void and passes no title to the grantee. (Citing *Johnson* v. *VanWyck,* 4 App. D. C. 294, 4 L.R.A. 520, and *Peck* v. *Heurich,* 6 App. D. C. 273.)

2. In the case of a deed made to a trustee to perfect title to land, but which contains no recitals as to who shall pay the cost and expenses of doing so, the presumption is that the grantee is to pay them. (Citing *Peck* v. *Heurich, supra.*)

3. A deed executed to a trustee for the purpose of perfecting title and selling the land will be held void for champerty, where the grantor received no part of the proceeds of the sale, and paid no part of the cost and expenses of suit for perfecting title (citing *Johnson* v. *Van Wyck,* and *Peck* v. *Heurich, supra*), and a deed executed by the trustee to another is therefore of no effect.

4. One who received a deed as trustee to perfect title, from the heirs of an intestate whose widow remained in possession of the property until her death, cannot, upon the failure of his deed on the ground of champerty, in an action of ejectment against the heir of the widow, claim a right to recover on the theory of actual possession through a tenant who unlawfully attorned to the heir of the widow, and who paid rent for a time to the trustee at the direction of such heir, where such direction was made before the deed of trust was executed. (Distinguishing *Bradshaw* v. *Ashley,* 14 App. D. C. 485, and *Rowlett* v. *Nash,* 38 App. D. C. 598.)

No. 2489.   Submitted April 8, 1913.   Decided May 5, 1913.

HEARING on an appeal by the defendants from a judgment of the Supreme Court of the District of Columbia on verdict for the plaintiff in an action of ejectment.          *Reversed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a judgment in an action of ejectment brought by Charles Newburgh against the appellants, Mary S.

Wilson and others, to recover the possession of parts of lots 15 and 16 in square 503, in the city of Washington.

The lots in controversy were the property of Thomas Ritter, who died while in the possession thereof, intestate and without issue, in September, 1897, leaving a widow, Ann Catherine Ritter, who remained in possession until her death, March 3, 1906. Thomas Ritter is the common source of title. At the death of said widow, the property passed into the possession of defendant Mary S. Wilson, one of her heirs at law. Plaintiff's evidence tended to show that the property had been leased to tenants, by an agent of Mrs. Ritter, from some time in 1904. July 23, 1906, he ceased to act as agent, and turned over the balance of rent in his hands, amounting to $50, to Mary S. Wilson. One Himmelright was the tenant. He testified that he paid the rent to the former agent, Davis, until Mrs. Wilson directed him to pay the rent to J. H. Adriaans. He paid the rent to Adriaans from July 3, 1906, until February 20, 1907, at which time Mrs. Wilson directed him to cease payments to Adriaans. He gave up the house later because "Adriaans, Newburgh, and others bothered him so much." Alice C. Gray was then placed in possession by Mrs. Mary S. Wilson, and paid rent to her. She was "bothered so much that she got out." Timothy J. Broderick succeeded Gray and pays rent to Mary S. Wilson. He was in possession at the time of trial. Plaintiff Newburgh has been to see him and claimed to be the owner. Plaintiff introduced evidence tending to show that the brother and sister of Thomas Ritter had died without issue, and that the grantors in the deed under which he claimed title were the only descendants of the father and mother of said Thomas Ritter. There were objections taken to certain of this evidence, and motions to exclude, which being overruled, exceptions were taken that will be noticed hereafter.

Plaintiff then introduced a deed executed by the said heirs at law, December 5, 1906, conveying the said premises to J. H. Adriaans in trust. This deed describes the property and recites the heirship of the grantors. The trusts are recited as follows:

"First, to perfect the title to said property by acquiring ad-

verse outstanding claims or encumbrances thereon. Second, to
sell the same at private or public sale, as the interests of the
parties of the first part shall be best subserved by either mode of
transfer; and to convey same in fee simple, to the purchaser,
who shall not be obliged to see to the application of the purchase
money. Third, to pay from the proceeds of the sale any legiti-
mate debts or claims on or against said property or the estate of
said Thomas Ritter. Fourth, to reimburse the heirs of Ann
Catherine Ritter for advances made by some of them to the party
herein of the second part, for the purpose of perfecting the title
to the herein-described property. Fifth, to reserve to the party
of the second part as compensation for making said sale, a com-
mission of 5 per centum of the amount of said sale. Sixth, to
reserve to the party of the second part, as compensation for per-
fecting said title, removing clouds therefrom, or obstacles to the
sale thereof, and for legal services rendered and to be rendered in
the adjustment of the estate of said Thomas Ritter, deceased, a
commission of 10 per centum on the amount of said sale. Sev-
enth, to pay over the balance of said purchase money, derived
from the said sale, to the parties of the first part, in equal shares
as the sole surviving heirs at law of said Thomas Ritter, after
making suitable provision therefrom for reimbursing some of
the heirs of said Ann Catherine Ritter for advances made by
them for the benefit of the parties herein of the first part, to the
party herein of the second part, for the purpose of perfecting
the title to said property and to acquire adverse claims thereto."

This deed was recorded March 5, 1908. A deed was then of-
fered, executed by Adriaans, trustee, February 14, 1908, convey-
ing the premises to Charles Newburgh; which deed had been
recorded March 5, 1908. The defendant objected to the first
deed being admitted in evidence because champertous and
against public policy; and to the second deed because no title
had been vested in Adriaans, as trustee, by the former deed.
Both objections were overruled, and exceptions reserved. Plain-
tiff also read in evidence a lease of the premises for one year,
executed by Mary S. Wilson and others, purporting to be the

heirs at law of Ann Catherine Ritter, to H. Himmelright, dated February 20, 1907, and recorded February 26th.

The case was submitted to the jury with a charge to which no exception was taken, and their verdict was for the plaintiff.

*Mr. J. Wilmer Latimer* for the appellants.

*Mr. W. A. Henderson* and *Mr. J. H. Adriaans* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The vital question in the case arises on the exception taken to the introduction in evidence of the conveyance in trust to Adriaans. It is the settled law of this District that a deed tainted with champerty is void, and therefore passes no title to the grantee. *Johnson v. Van Wyck,* 4 App. D. C. 294, 5 L.R.A. 520; *Peck v. Heurich,* 6 App. D. C. 273, s. c. 167 U. S. 624, 42 L. ed. 302, 17 Sup. Ct. Rep. 927. In those cases the title had been conveyed to trustees for the purpose of bringing actions for the recovery of the land conveyed. That the costs and expenses of the litigation were to be paid by the trustee was expressly stipulated in the conveyance held void in *Johnson v. Van Wyck.* In *Peck v. Heurich* there was no such express covenant, but it was implied from the provision for the division of the results of the litigation. There is no such covenant in the conveyance under consideration; nor is the provision for division of the proceeds in the same or similar language; there is no mention of costs and expenses.

As contracts for contingent fees are not now necessarily regarded as champertous in this jurisdiction, it is contended that this conveyance amounts to such an undertaking and nothing more. There is a material difference, however, between a contract for a contingent fee, fairly made, where an attorney undertakes to prosecute an action on behalf and in the name of his client, and a conveyance to the attorney of all the right, title,

and interest of the client, by reason of which the action can only be maintained in the name of the attorney, or his grantee for the purpose. In the first-mentioned instance the action can only be brought in the name of the client, who is therefore liable to a judgment for costs, in case of failure, and who, in the absence of a contract to the contrary, is presumed, as between him and the attorney, to be chargeable with the necessary costs and expenses of the litigation. In the second instance the attorney takes a conveyance of all the title that the client may have; the action must necessarily be in his name, or in that of a grantee for the purpose. He assumes the duty and burden of bringing and maintaining the action in his own name, and is bound by the record for all costs that may be adjudged; and, as between him and his grantor client, the reasonable presumption is, in the absence of proof to the contrary, that he assumed the expenses of the litigation, which the client had surrendered his right to maintain. If this be not correct, then the salutary rule of law for the prevention of champerty, declared in *Peck* v. *Heurich,* may be avoided by taking care to omit any stipulation regarding the payment of costs and expenses from the recitals of the conveyance.

The doctrine above enounced was expressly recognized in *Peck* v. *Heurich* by Mr. Justice Morris in delivering the opinion of the court, as follows:

"There was considerable argument on behalf of the appellants expended in an attempt to show that the deed, which contained the agreement of the parties, did not expressly provide for the payment of the costs and expenses of the litigation by the attorney; and that he might be regarded as advancing the costs in the shape of a loan to his clients. It may be admitted that the contract contains no express covenant that the attorney shall pay the costs of litigation. But no express covenant for that purpose is required, if that was the necessary result of the contract. The title, so far as the clients had title to convey, was vested in the attorney and his cotrustee for the express purpose of instituting suits in their own names and in their own rights; and if the contract were wholly silent on the subject, the plain

inference would be that they should pay the costs and expenses. Costs and expenses were to be paid; costs and expenses, we presume, were paid; and plaintiffs are primarily liable for such costs and expenses." (6 App. D. C. 284–285.)

It is true that this was not essential to the decision of that case, but it was a question raised on the argument and incidentally decided. In our opinion it declared a sound principle of law, without the observance of which the law against champerty would become a mere matter of form. But we are not left to presumption in this case. Catherine Buck, one of the grantors in the deed to Adriaans, was introduced as a witness on behalf of the plaintiff to prove the relation between the grantors in said deed and the common source of title, Thomas Ritter.

On cross-examination she said: "That she had received no part of the purchase price involved in the sale by Adriaans to plaintiff; that she had paid no part of the costs of this or any other proceeding for the recovery of the property, and had not agreed to defray, or aid in defraying, such costs, and that she was not expected to put up any costs." This statement was uncontradicted. We think it was error to permit the introduction of the deed. Plaintiff's chain of title is necessarily broken in two, and the deed from Adriaans to him has no effect.

It is further contended on behalf of the appellee that Adriaans was in actual possession of the premises through a tenant who unlawfully attorned to the appellant Wilson, and thereby was entitled to recover, without proof of other title, against a mere intruder or trespasser, under the authority of *Bradshaw* v. *Ashley,* 14 App. D. C. 485, s. c. 180 U. S. 59, 45 L. ed. 423, 21 Sup. Ct. Rep. 297. See also *Rowlett* v. *Nash,* 38 App. D. C. 598.

There is nothing upon which to found this contention. The evidence introduced by the plaintiff shows that at the death of Ann Catherine Ritter, the widow of Thomas, the tenant in possession attorned to Mary S. Wilson, one of her heirs, and paid rent to her; from July 23, 1906, to February 20, 1907, he paid the rent to Adriaans by direction of Mary Wilson; on the last-named date he ceased payment to Adriaans by her direction.

There is no evidence tending to show why Mary Wilson directed her tenant to pay the rent due her to Adriaans. Presumably he was her agent for collection, for at that time he had no claim of title. The conveyance under which his title has been asserted was not executed until December 5, 1906.

The foregoing conclusions render it unnecessary to consider the assignment of error founded on exceptions taken to certain evidence introduced by the plaintiff to establish the relationship of the grantors in the deed to Adriaans, to Thomas Ritter.

For the reasons given, the judgment is reversed with costs, and the cause remanded, with direction to set aside the verdict and award a new trial.                    *Reversed.*