# MOLLOHAN *v.* MASTERS.

---

CONTRACTS; PRINCIPAL AND AGENT; USURY; EQUITY; MORTGAGES AND DEEDS OF TRUST; ESTOPPEL; INTERVENTION.

1. Where the contract of a party was made through his agent, testimony by the principal of his understanding of the contract is mere hearsay.

2. A statement by a title company charged with the duty of consummating a sale of real estate by adjusting the mortgage or deed of trust indebtedness thereon and delivering the deeds, giving the price of the property, the indebtedness due upon it, and the balance due the seller, and authority by the seller to the company to settle the sale in accordance with such statement, are not inconsistent with a claim by the seller that he purchased the equity of redemption in the property, and did not agree to pay a given amount for the property and assume the indebtedness in part payment.

3. A purchaser of a mere equity of redemption in real estate is in such privity of estate or contract with the mortgagor as to enable him to plead that usury was exacted by the mortgagee in making the mortgage loan; but the rule is different where the sale was for a given sum and the purchaser assumed the mortgage indebtedness as part payment of the purchase price, as in the latter case to permit a plea of usury to reduce the encumbrance would amount to a reduction of the agreed price and the making of a new contract for the parties. (Citing *Middle States Loan, Bldg. & Constr. Co.* v. *Baker*, 19 App. D. C. 1.)

4. The fact that, in the purchase of an equity of redemption in real estate, the seller did not convey directly to the purchaser, but conveyed to a third person, who had no interest in the transaction, and who thereupon conveyed to the purchaser, will not estop the purchaser from claiming that usury was exacted by the mortgagee from the mortgagor when the mortgage debt was created.

5. Where promissory notes infected with usury come into the possession of a corporation through its agents who had notice of the usury, the corporation is not in a position to claim that it is an innocent purchaser, notice to the agents being notice to the principal. (Distinguishing *Metropolitan Loan & T. Co.* v. *Schafer*, 44 App. D. C. 356.)

6. A petition to intervene in this court will not be entertained where the decree is reversed and the interveners as a result of such reversal will have an opportunity to intervene in the court below and assert their claims.

7. If in the sale of real estate under the direction of the equity court, in which it is shown that mortgage notes are infected by usury, it appears that some of the notes are held by innocent parties, and the amount realized from the sale is insufficient to satisfy their claims, they will be awarded judgment for the deficiency against the parties to the suit who exacted the usury.

8. *Metropolitan Loan & T. Co.* v. *Schafer*, *supra*, will be construed to apply narrowly to the facts of that case, and not to furnish a defense for

every sort of fraudulent juggling through the medium of collateral
transactions.

No. 2912.   Submitted October 5, 1916.   Decided November 14, 1916.

HEARING on an appeal by the plaintiff from a decree of the
Supreme Court of the District of Columbia in favor of the
defendants in a suit in equity to enjoin the sale of certain real
estate under deeds of trust and for an accounting.   *Reversed.*

The facts are stated in the opinion.

*Mr. W. Gwynn Gardiner,* for the appellant, in his brief cited:

*Berdan* v. *Sedgwick,* 44 N. Y. 626; *Brainard* v. *Buck,* 184
U. S. 99; *Brolasky* v. *Miller,* 9 N. J. Eq. 807; *Brooks* v. *Avery,*
4 N. Y. 229; *Brown* v. *Slocum,* 30 App. D. C. 576; *Camden
F. Ins. Co.* v. *Reed,* — N. J. —, 38 Atl. 667; *Cobe* v. *Summers,*
143 Mich. 117; *Cole* v. *Bansemer,* 26 Ind. 94; *Consaul* v. *Cum-
mings,* 24 App. D. C. 36; *Crawford* v. *Nimmons,* 180 Ill.
143; *Cummins* v. *Wire,* 6 N. J. Eq. 73; *De Wolf* v. *Johnson,*
10 Wheat. 367; *Dix* v. *Van Wyck,* 2 Hill, 522; *Dun* v. *Lum-
berman's Credit Asso.* 209 U. S. 20; *Egan* v. *North American
Sav. Loan & Bldg. Co.* 45 Or. 131; *Erwin* v. *Morris,* 137 N.
C. 48; *Faisong* v. *Grandy,* 128 N. C. 434; *First Nat. Bank*
v. *Drew,* 226 Ill. 622; *Fitchie* v. *Brown,* 211 U. S. 321; *Ford*
v. *Washington Nat. Bldg. Asso.* 10 Idaho, 30; *Grafton* v.
*Paine,* 7 App. D. C. 255; *Grove* v. *Great Northern Loan Co.*
17 N. D. 352; *Harrison* v. *Perea,* 168 U. S. 311; *Hutchins* v.
*Munn,* 28 App. D. C. 271; *Keller* v. *Ashford,* 133 U. S. 610;
*Kellogg,* 113 Fed. 120; *Lamb* v. *Burnett,* 173 U. S. 430; *Leach*
v. *Burr,* 188 U. S. 510; *Lloyd* v. *Scott,* 4 Pet. 205; *Lyon* v.
*Welch,* 20 Iowa, 579; *Maher* v. *Lanfrom,* 86 Ill. 513; *Male*
v. *Wink,* 61 Neb. 748; *Maryland Ins. Co.* v. *Woods,* 6 Cranch,
29; *Merillat* v. *Hensey,* 221 U. S. 333; *Merchants Exch. Nat.
Bank* v. *Commercial Warehouse Co.* 49 N. Y. 635; *Middle
States Loan, Bldg. & Constr. Co.* v. *Baker,* 19 App. D. C. 1;
*Mt. Pleasant* v. *Beckwith,* 100 U. S. 514; *Nash* v. *Milford,*

33 App. D. C. 142; *National Mut. Bldg. & L. Asso.* v. *Retzman,* 69 Neb. 667, 96 N. W. 204; *Newman* v. *Kershaw,* 10 Wis. 333; *Paige* v. *Rogers,* 211 U. S. 757; *People's Bldg. Asso.* v. *Sellars,* 19 Tex. Civ. App. 281; *Pinnell* v. *Boyd,* 33 N. J. Eq. 600; *Post* v. *Dart,* 8 Paige, 639; *Preston* v. *Cuneo,* 140 App. Div. 144; *Richardson* v. *Van Auken,* 5 App. D. C. 209; *Second Nat. Bank* v. *Grand Lodge,* 98 U. S. 123; *Seigler* v. *Mauer,* 35 S. C. 115; *Slayton* v. *Riddle,* 114 Pa. 464; *Smith* v. *Cross,* 16 Hun, 487; *Southern Pine Lumber Co.* v. *Ward,* 208 U. S. 126; *Title Guarantee & T. Co.* v. *Wheatfield,* 123 Md. 458; *Union Nat. Bank* v. *International Bank,* 123 Ill. 510; *Valentine* v. *Fish,* 45 Ill. 466; *Vilas* v. *McBride,* 62 Hun, 324; *Washington Nat. Bldg. Asso.* v. *Andrews,* 95 Md. 696; *Western Storage & Warehouse Co.* v. *Glasner,* 169 Mo. 38; *Wightman* v. *Suddard,* 93 Ill. App. 143; *Willard* v. *Wood,* 135 U. S. 309; Jones, Mortg. 6th ed. sec. 644; Thomp. Bldg. & L. Asso. p. 522; Tyler, Usury, p. 406; Webb, Usury, sec. 350; D. C. Code, secs. 1180, 1182.

*Mr. Daniel W. Baker, Mr. Wilton J. Lambert,* and *Mr. E. L. Gies,* for the appellees other than the receiver, in their brief cited:

*Easter* v. *Ralston,* 32 App. D. C. 12; *Mt. Pleasant* v. *Beckwith,* 100 U. S. 514; *Harrison* v. *Perea,* 168 U. S. 311–326; *So. Pine Lbr. Co.* v. *Ward,* 208 U. S. 126; *Hough* v. *Horsey,* 36 Md. 181; *Mahoney* v. *McCubbin,* 54 Md. 268; *Log Cabin Permanent Bldg. Asso.* v. *Christian Gross,* 71 Md. 456; *Jones* v. *Ins. Co.* 40 Ohio St. 583; *Esseley* v. *Sloan,* 166 Ill. 391; *Bldg. & L. Asso.* v. *Walker,* 39 Neb. 456; *Reed* v. *Eastman,* 50 Vt. 67; *Dickerson* v. *Bldg. Asso.* 93 Va. 498; *Tibball* v. *Schmeltz,* 77 Kan. 440; *Lee* v. *Stiger,* 30 N. J. Eq. 610; *Male* v. *Wink,* 61 Neb. 748; *Loan & Constr. Co.* v. *Baker,* 19 App. D. C. 1; *Washington Bldg. Asso.* v. *Andrews,* 95 Md. 696.

*Mr. Wm. Henry White,* for the receiver, in his brief cited:

Pom. Eq. Jur. 3d ed. § 1080, note (d) and cases cited. *Re*

*Hodges,* 66 Vt. 70; *Nat. Sav. & T. Co.* v. *Sands,* 44 App. D. C. 20.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This suit was brought in the supreme court of the District of Columbia to enjoin the sale of certain real estate under deeds of trust. The bill alleges usury in the notes secured by the deeds of trust, and prays for an accounting to ascertain the amount due defendants, Samuel J. Masters, John B. Kinnear, Harry Lamson, Ernest M. Hunt, John P. F. White, the Metropolitan Loan and Trust Company, a body corporate and the Modern Workmen of the World, a body corporate, and for the administration of the trusts by the court, and for injunction.

An injunction *pendente lite* was granted, and the matter referred to the auditor to state an account between the parties. On the report of the auditor in favor of plaintiff, Edward W. Mollohan, the court below, on consideration of the whole case, entered a decree in favor of the defendants, from which plaintiff has appealed.

The record discloses that the property in question was owned jointly by one McEuen and one White, the title being in the latter. The notes secured by the deeds of trust were all executed by White, some of the loans being negotiated by McEuen, who, it is conceded, in all of the transactions involved acted as the agent of White.

Plaintiff, Mollohan, entered into negotiations with McEuen as the agent of White, for the purchase of the property. The whole case turns upon the terms of sale, defendants contending that Mollohan agreed to pay $23,500 for the property, assume the indebtedness against it, and pay White the difference. Mollohan testified that he purchased through McEuen the equity of White for $2,000, and agreed to assume the indebtedness against the property. In this he is substantially corroborated by McEuen. No contract in writing was made between Mollohan and McEuen; hence, to determine the terms of sale we must look to their testimony. Much evidence has

been adduced from third parties as to their understanding of the contract. White testified that the purchase price was $23,500, but it is undisputed that he never had any dealings or conversation with Mollohan in relation to the sale. The sale was made solely by McEuen, as White's agent; and McEuen's contract became White's. White's testimony as to his understanding of the contract, in the absence of any admission or assent on the part of Mollohan, is mere hearsay. The same is true of the other witnesses, who testified as to their understanding of the terms of the original contract between McEuen and Mollohan. The case, therefore, as to the contract of sale, must rest upon the testimony of plaintiff and McEuen, together with one piece of documentary evidence designated in the record as "schedule B."

When the plaintiff purchased the property, the matter of adjusting the indebtedness and passing title was turned over to the Lawyers Title Company, of Washington. The title company prepared the paper (schedule B), which is a statement of the total indebtedness against the property and the amount due White. It contains, among other things, the following:

"Price of property ................ $23,500
    Indebtedness .................... 21,533.94

    Balance of cash to White .......... $1,966.06"

The statement concluded as follows:

You are authorized to settle the sale of my purchase of Marshall, assuming the within figures to be correct, as to the encumbrances. You are authorized to accept the amount on the within statement as the correct amount due.

Feb. 1st, 1911.

E. W. Mollohan.

When this statement was presented to plaintiff, he refused to sign it until he could consult with McEuen. McEuen assured him that defendants Masters and Kinnear, with whom he, McEuen, as agent for White, had negotiated the notes,

either directly or through defendant Lamson as agent for Mc-
Euen, would greatly reduce the indebtedness. On this assur-
ance, plaintiff signed the statement.

This statement is not a contract or a modification of the orig-
inal contract. It was merely a memorandum of the basis upon
which the title company determined the indebtedness and the
balance due White. It may be suggested that, according to
the account of the auditor, White got within 60 cents of $2,000,
the discrepancy shown in schedule B being accounted for in a
separate transaction. White's debts, through the ingenuity
of Masters and Kinnear, were in such a condition that there
was no certainty as to amount. McEuen, when the contract
of sale was made, estimated them to plaintiff, at $18,000,
with reductions. Plaintiff stated that he thought the property
was worth about $20,000. It seems to have been from these
two statements that the minds met on $2,000 for the equity
of White. We think there can be no other reasonable conclu-
sion from the whole case than that plaintiff was to step into
the shoes of White for $2,000, and assume White's obligations.

In this view of the case, the law is one way. Plaintiff is
placed in such privity with White as to enable him to plead
usury, which seems to be exorbitant in this transaction. A
purchaser of a mere equity of redemption in real estate, as in
this case, is in such privity of estate or contract with the mort-
gagor and grantor as to enable him to plead usury. The ruling
is different where the sale is for a given amount and indebted-
ness is assumed as part payment. In such a case, to permit
the plea of usury to reduce the encumbrance would amount to
a reduction of the agreed purchase price and the making of a
new contract for the parties.

The distinction is stated in the case of *Hough* v. *Horsey*, 36
Md. 181, 11 Am. Rep. 484, as follows: "And this feature
essentially distinguishes the present case from that in which
the purchase is made of the mere equity of redemption, without
any special agreement as to the application of the purchase
money, or any reference whatever to the particular amount due
on the outstanding mortgage. Here the whole estate was

purchased, with a special agreement for the application of a certain part of the purchase money; and the effect of the present application is to relieve the complainant from doing what she has expressly agreed to do, and upon the faith of which she obtained the conveyance for the land embraced by the mortgage."

The same distinction was made in this jurisdiction in *Middle States Loan, Bldg. & Constr. Co.* v. *Baker,* 19 App. D. C. 1, in which the court said: "But the principal contention of the appellant is, that the appellee, not being the original mortgagor, but only a grantee or assignee of the mortgagor through divers *mesne* conveyances, is not entitled to have the advantage of the usury paid by his predecessor in the title. * * * In reference to the right of a grantee of mortgaged property to take advantage of usurious payments made by his predecessors in the title on account of the mortgage debt there is a well-established distinction in the law between the case of one who takes the property with the specific agreement to pay the mortgage debt according to the face of the mortgage as part of the consideration for the land purchased, and the case of one who merely purchases the equity of redemption, without any special agreement as to the application of the purchase money, or any reference to the particular amount due on the outstanding mortgage."

In this instance, title did not pass directly from White to plaintiff. White deeded to one Bradford, who subsequently deeded to plaintiff. It is sufficient to say that there is nothing in the deed from Bradford to plaintiff to change the nature of the obligation assumed in the contract of purchase. Plaintiff was not a party to the deed from White to Bradford. Bradford was a straw man set up as a conduit of title at the instance and for the convenience of Masters and Kinnear; hence, it goes without saying that they are not in position in a court of equity to estop plaintiff by the covenants and warranties of that conveyance.

It is contended on the part of defendants that certain of the notes secured by the deeds of trust in controversy had passed into the ownership of the Modern Workmen of the World

and the Royal Life Insurance Company, or the Metropolitan Loan and Trust Company, for value, before maturity, and without notice of their usurious character. Counsel for defendants rely upon the case of *Metropolitan Loan & T. Co. v. Schafer,* 44 App. D. C. 356, as decisive of this case. The court below found that the notes in question were infected with usury, and with this conclusion we are in accord. In the *Schafer Case,* the notes were purchased in the open market on a sale of collateral. In the present case, the notes found their way into the possession of the corporations mentioned through the juggling of Masters and Kinnear, who were acting as the officers and agents of the corporations. Notice to the agents was notice to the principals; hence, the corporations are not in the position of innocent purchasers for value.

In any event, in further procedings below, if the receiver of the Modern Workmen of the World or the Royal Insurance Company is advised of rights of innocent parties to be protected, he should be heard in that behalf, and, if established, relief can be granted in the decree to the full value of the notes, leaving to Masters and Kinnear the balance, if any, of the amount found due from plaintiff by the auditor.

A petition for right to intervene has been filed in this court on behalf of the receiver of the Modern Workmen of the World. It is unnecessary to consider the merits of this petition, since the case will have to go back for further proceedings and decree, and intervention may be sought in the court below, where such a proceeding may properly be instituted.

The decree is reversed with costs, and the cause is remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

A petition for a rehearing by appellees Kinnear and Masters was dismissed December 4, 1916, Mr. Justice VAN ORSDEL delivering the opinion of the Court:

A petition for rehearing was filed by counsel for appellees Kinnear and Masters on the ground "that the six notes, aggre-

gating $5,000, mentioned in the tenth paragraph of the bill
on page six, and on page seventeen of the answer of Kinnear
and Masters, were the property of the Metropolitan Loan &
Trust Company, purchased in open market through John B.
Kinnear, * * * and are a valid lien on the property
mentioned in the bill, and are in no way connected with the
notes against which usury was found by the auditor."

In the bill, the sale of the six trust notes, aggregating $5,000,
as collateral to secure the payment of the $3,125 note alleged
to have been owned by the Metropolitan Loan & Trust Com-
pany, was set out. The validity of the sale is attacked, and
it is averred that they were sold to Kinnear, and that, thereafter,
Kinnear and Masters claimed to be the owners thereof. Kin-
near and Masters in their sworn answer aver as follows: "In
regard to the notes for $5,000 these defendants say that they
were purchased at the said sale by the defendant Kinnear for
$100, and the amount realized from the sale of the said notes
was credited upon the said note for $3,125. That the said
notes are the property of the said defendant Kinnear. That
he had a perfect right to buy them, as the collateral note secured
by the said notes for $5,000 was the property of the Metropoli-
tan Loan & Trust Company and secured by the notes secured
by the deeds of trust to the defendants Lamson and Hunt, and
that he was neither the trustee nor the *'cestui que trust.' "*

In regard to these notes, the auditor found as follows: "The
usury on the loans by Kinnear and Masters to White secured
by the trusts is affirmatively proven, wholly undenied by defend-
ants, and substantially admitted by them. For the first note
of $3,125 secured by the trust notes aggregating $5,000, the
sum of $2,500 was paid. For the last two notes aggregating
$4,400, together with the unsecured note for $600, the sum of
$4,000 was paid. All told, $8,400 was paid for notes aggre-
gating $10,625. In addition, however, to the claim on the
notes for $10,025, claim is made in this cause, and necessarily
made to enter into the foreclosure, on notes for $5,000 secured
on the real estate involved and held as security for the note
of $3,125, as having been sold as such collateral upon default

in the payment of the note of $3,125, and purchased by Kinnear for $100, making the notes claimed on $15,025, of which $11,900 are secured by trusts as aforesaid."

There is nothing to show that these notes were purchased by Kinnear on behalf of the Metropolitan Loan & Trust Company, but he positively avers that he purchased them for himself and is the owner thereof. It hardly needs any suggestion that Kinnear, or Kinnear and Masters, who negotiated the original loan and secured the trust notes which were hypothecated as collateral security therefor, are not in the position of innocent purchasers of the notes sold as collateral. They held them charged with all the infirmities of which they are infected. As to these trusts, involving the six notes aggregating $5,000, Mollohan owes the amount of the $3,125 note which was paid to White,—$2,500. If the Metropolitan Loan & Trust Company can establish that it was an innocent holder of the $3,125 note, it should be reimbursed the amount in excess of $2,500 from any balance due in the general settlement to Masters and Kinnear.

In other words, the opinion and judgment of this court fixed the liability of Mollohan at the balance found by the auditor, and remanded the cause to permit any innocent parties who may have suffered through the illegal transactions of Masters and Kinnear to intervene and establish their claims and be paid out of the proceeds of the sale of the property, or the redemption from sale by Mollohan, prior to the payment of any sum to Masters and Kinnear. Should there be insufficient funds thus derived to satisfy the claims of such innocent holders, which seems hardly possible, they should be awarded judgment therefor against Masters and Kinnear.

It is sought to bring this case within the decision in *Metropolitan Loan & T. Co.* v. *Schafer,* 44 App. D. C. 356. That decision will be construed to apply narrowly to the facts of that case (which have no analogy here), and not to furnish a defense for every sort of fraudulent juggling through the medium of collateral transactions.

The petition is dismissed.