## HARTMAN v. LUBAR.
### No. 7965.

United States Court of Appeals for the
District of Columbia.

Decided Dec. 31, 1942.

Mr. Isadore H. Halpern, of Washington, D. C., for appellant.

Mr. Solomon H. Feldman, of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and MILLER and EDGERTON, Associate Justices.

MILLER, Associate Justice.

Abe Orleans loaned approximately $900 to Rosenblum and Hartman. He took from them a promissory note in the amount of $1,000, payable in $20 weekly installments and secured by a chattel deed of trust. He endorsed the note to the District Finance Corporation. Thereafter, Nathan Lubar, as trustee under the deed of trust, sued in replevin to recover the chattels from Hartman and Rosenblum. During the trial Hartman offered to prove that Abe Orleans was the principal stockholder and President of the District Finance Company; that Lubar was an officer and counsel for the Finance Company; that the loan was actually made by the Finance Company; that the Finance Company was engaging in the business of lending money in the District of Columbia at an interest rate greater than six per cent without having procured the license required by the statute. The trial court excluded the offered evidence and directed a verdict. Hartman appealed. We took the case to determine whether it is controlled by the Act of February 4, 1913, colloquially known

as the Loan Shark Law of the District of Columbia.

■ The Act,[1] which appears in the 1940 Revision of the District of Columbia Code as Section 26—601 et seq., makes it "unlawful and illegal to engage in the District of Columbia in the business of loaning money upon which a rate of interest greater than six per centum per annum is charged on any security of any kind, direct or collateral, tangible or intangible, without procuring license * * *." If the disputed loan was made by one who was engaging in the business [2] of lending money in violation of the law, and if the loan was made in the course of that business, then it constituted an illegal contract.[3] The general rule is that an illegal contract, made in violation of a statutory prohibition designed for police or regulatory purposes, is void and confers no right upon the wrongdoer.[4] The present case comes under no exception to the general rule.[5] Every consideration of public policy suggests that a contract made in violation of the Loan Shark Law should be unenforceable.

■ This defense is available, not only against the nominal maker of the loan, but against the principal for whom he acts;[6] and against the holder of an instrument given to secure payment of the loan, if the latter knew of its illegality.[7]

■ Appellee would escape this result by urging that Section 26—601 has no application to a loan larger than $200. He relies upon our decision in Von Rosen v. Dean.[8] But that case is not properly susceptible of the interpretation which appellee would place upon it. There we said: "* * * the Loan Shark Law can have no application *to a case of this sort,* since the act was intended to apply only to persons making small loans upon personal security, as shown by the fact that the amount of such loans is limited by the act to $200." [Italics supplied.] But the statement must be limited to the particular section there involved and to the situation presented by the facts of that case. There the plaintiff invoked, unsuccessfully, the special remedy provided by Section 26—605, which permits the borrower to recover a sum equal to one-fourth the principal, in addition to compelling forfeiture of the usurious interest. It will be observed that the Act of March 3, 1901, as amended in 1920, which appears as Section 28—2703 of the District Code, in its 1940 revision,[9] also provides for forfeiture of interest on usurious loans; and provides further: "That nothing in this chapter contained

[1] Act of February 4, 1913, 37 Stat. 657, amended March 3, 1917, 39 Stat. 1006, D.C.Code (1924) p. 572 et seq.

[2] Cf. Zirkle v. Daly, 60 App.D.C. 344, 54 F.2d 455 (nonresident making occasional loans on realty held not engaged "in the business," within Loan Shark Law; such cases were held to be covered by §§ 28—2703 and 28—2704); Dane v. Brown, 1 Cir., 70 F.2d 164, and cases there cited (single isolated acts do not constitute engaging in business).

[3] Weil v. Neary, 278 U.S. 160, 171, 173, 49 S.Ct. 144, 73 L.Ed. 243; Ewert v. Bluejacket, 259 U.S. 129, 138, 42 S.Ct. 442, 66 L.Ed. 858; Brown v. Gesellschaft, 70 App.D.C. 94, 104 F.2d 227; Bank of United States v. Owens, 2 Pet. [U.S.] *527, 7 L.Ed. 508; E. C. Warner Co. v. W. B. Foshay Co., 8 Cir., 57 F.2d 656, 659, certiorari denied 286 U.S. 558, 52 S.Ct. 641, 76 L.Ed. 1292; Sachs v. Ginsberg, 5 Cir., 87 F.2d 28, 30. See Awotin v. Atlas Exchange Nat. Bank, 295 U.S. 209, 214, 55 S.Ct. 674, 79 L.Ed. 1393; Mayer v. White, 65 U.S. 317, 321, 16 L.Ed. 657. Cf. Pearson v. Small, 65 App.D.C. 243, 245, 82 F.2d 849, 851.

[4] Ewert v. Bluejacket, 259 U.S. 129, 137, 138, 42 S.Ct. 442, 66 L.Ed. 858;

Weil v. Neary, 278 U.S. 160, 171, 49 S. Ct. 144, 73 L.Ed. 243. But see 2 Restatement, Contracts (1932) § 598, comment a.

[5] See Burck v. Taylor, 152 U.S. 634, 649, 14 S.Ct. 696, 38 L.Ed. 578; Waskey v. Hammer, 223 U.S. 85, 94, 32 S.Ct. 187, 56 L.Ed. 359; Lloyd v. Johnson, 45 App.D.C. 322, 330.

[6] Mollohan v. Masters, 45 App.D.C. 414, certiorari denied 242 U.S. 652, 37 S.Ct. 245, 61 L.Ed. 546.

[7] Jones v. Dannenberg Co., 112 Ga. 426, 431, 37 S.E. 729, 732, 52 L.R.A. 271 (bona fide holder for value before due and without notice); Riordon v. McCabe, 341 Ill. 506, 512, 173 N.E. 660, 663, 83 A.L.R. 512; United Security Life Ins. & Trust Co. v. Brown, 270 Pa. 264, 268, 113 A. 443, 445; Johnson v. McMillion, 178 Ky. 707, 710, 199 S.W. 1070, 1072, L.R.A.1918C, 244. Cf. Warder v. Newburgh, 40 App.D.C. 385, 388; Embrey v. Jemison, 131 U.S. 336, 348, 9 S.Ct. 776, 33 L.Ed. 172.

[8] 59 App.D.C. 359, 41 F.2d 982, 983.

[9] 31 Stat. 1377, amended June 30, 1902, 32 Stat. 542, April 19, 1920, 41 Stat. 568, D.C.Code (1924) § 1180.

shall be held to repeal or affect sections 26—601 to 26—611." It is apparent that the two laws were intended to be read together. Section 26—605, which was under consideration in the Von Rosen case, concerns loans made at the rate of *one per centum per month*; it expressly provides that: "No such loan greater than two hundred dollars shall be made *to any one person*: * * *" [Italics supplied] and then goes on to provide for forfeiture of interest and one-fourth the principal sum.

But Section 26—601 contains no $200 limitation. It applies to *all* who would engage, in the District of Columbia, in the business of lending money upon which a rate of interest greater than *six per centum per annum* is charged, except those exempted by Section 26—610.[10] And Section 26—610 incorporates by reference Sec-

tions 47-1701 to 47-1709,[11] which define the exempted businesses. When these several statutes are read together, as the lawmakers intended, they constitute a comprehensive code for the business of lending money in the District of Columbia. This purpose, and the purpose of the 1913 Act, are further revealed by its title:[12] "An Act to regulate the business of loaning money on security of any kind by persons, firms, and corporations other than national banks, licensed bankers, trust companies, savings banks, building and loan associations, and real estate brokers in the District of Columbia."

The evidence offered was competent, therefore, to show the illegality of the transaction and the resulting absence of title in the trustee, upon which appellee based his right to possession.

Reversed.

---

[10] "Nothing contained in this chapter shall be held to apply to the legitimate business of national banks, licensed bankers, trust companies, savings banks, building and loan associations, or real estate brokers, as defined in sections 47-1701 to 47-1709." 37 Stat. 660, D.C. Code (1924) p. 576.

[11] Act of July 1, 1902, 32 Stat. 621.

[12] 37 Stat. 657.