**HARTMAN v. LUBAR.**

No. 381.

Municipal Court of Appeals for the
District of Columbia.

Nov. 14, 1946.

Rehearing Denied Dec. 16, 1946.

I. H. Halpern, of Washington, D. C., for appellant.

William R. Lichtenberg, of Washington, D. C. (Samuel Barker, of Washington, D. C., on the brief), for appellee.

Before HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

Appellee, as trustee under a chattel deed of trust, brought an action in replevin against appellant and one Rosenblum, his former partner, as makers of the note thus secured, for the recovery of the chattels named therein. The basis of the suit was that the note was in the amount of $1,000, that only $80 had been paid, and that the balance was in default. Prior to trial, the chattels replevied were sold at public auction, realizing $522.47. Rosenblum confessed judgment. Appellant defended on two principal grounds: first, that the loan itself was usurious and, second, that the corporation making the loan was engaged in the business of lending money at a rate of interest in excess of 6% per annum and was doing so without a license, in violation of the District of Columbia Loan Shark Law,[1] and that appellee could not recover even the principal of the loan.

---

[1] Code 1940, § 26—601 et seq.

The trial court directed a verdict for appellee, judgment was entered on the verdict, and from the judgment this appeal is taken.

The law of the case was established by the United States Court of Appeals for the District of Columbia on an appeal taken from a prior directed verdict for appellee. Hartman v. Lubar, 77 U.S.App.D.C. 95, 133 F.2d 44, cert. denied 319 U.S. 767, 63 S.Ct. 1329, 87 L.Ed. 1716. In that decision various statutes were held to form a comprehensive code governing money lending and usurious transactions in the District of Columbia.

Under one of these statutes, except as otherwise provided, no more than six per cent per annum may be charged on an oral contract, and no more than eight per cent per annum on a written contract. If greater than the legal rate is charged the whole of the interest so contracted for is forfeited. Code 1940, § 28—2703. Another provision is that if an action is brought on the obligation, the creditor may recover only the principal, and all interest payments made will be considered as payments on the principal. Code 1940, § 28—2705. Still another provision is that if the credior has collected, directly or indirectly, greater than the legal rate of interest, whether in advance or not, the debtor may within one year sue to recover all interest so paid.[2] Code 1940, § 28—2704.

However, the last named Code section does not apply to the situations covered by the Loan Shark Law, Code 1940, §§ 26—601 to 26—611. The Loan Shark Law provides that licensed small loan companies may charge up to one per cent per month on loans which must not exceed $200 to any one person. If any person shall contract for or receive, directly or indirectly, a greater rate of interest than fixed by the Loan Shark Law, he shall forfeit to the borrower, in addition to all interest contracted for or received, a sum equal to one-fourth of the principal. Code 1940, § 26—605. The Loan Shark Law further provides that, with the exception of the legitimate business of banks, trust companies, building and loan associations or real estate brokers as set forth in Section 26—610 and defined in 47—1701 to 47—1709, it shall be unlawful and illegal to engage in the business of lending money at a rate greater than six per cent per annum on any security without a license. Code 1940, § 26—601. Contracts made in violation of this Act are void and can not be enforced.[3] Criminal penalties are also provided for violations of the Loan Shark Law.

On the prior appeal the United States Court of Appeals also held that "this defense (of illegality) is available, not only against the nominal maker of the loan, but against the principal for whom he acts; and against the holder of an instrument given to secure payment of the loan, if the latter knew of its illegality." The court reversed the trial court for excluding evidence offered to prove that the finance company alleged to have made the loan was engaged in the business of lending money in the District of Columbia at an interest rate greater than six per cent per annum without having procured a license. The same grounds, among others, are urged on this appeal.

In the trial of the present case, appellee introduced in evidence a promissory note in the amount of $1,000. It was signed by Hartman and Rosenblum as makers and named one Abe Orleans as payee. It provided for 50 weekly payments of $20 "with interest *after maturity* at the highest legal contract rate until paid." On the reverse of the note, Abe Orleans had endorsed it without recourse to the District Finance Corporation, of which he was then president. Although appellee contends that the loan was actually made by Abe Orleans and that the note was then discounted by the corporation, or "sold" to it, Orleans himself admitted he personally had paid nothing for the note and had never owned it. Thus there was ample evidence to warrant the conclusion that Orleans was a straw payee and that the corporation itself made the loan to appellant.

[2] Cockrell v. First Federal Savings & Loan Ass'n, D.C.Mun.App., 33 A.2d 621.

[3] Hartman v. Lubar, supra.

The usury statute may be violated by deducting a commission in advance as well as by any other means by which money in excess of the legal rate is exacted.[4] There was conflicting evidence as to whether appellant was actually loaned $900 or $917.50 on the $1,000 note. Thus he was charged a minimum of $82.50, deducted in advance, for a maximum loan of $917.50, to be repaid in installments within 50 weeks, or less than one year. If $917.50 was loaned, the interest for 50 weeks at the legal rate of eight per cent per annum would be $70.50; if $900 was loaned, $69. At six per cent, obviously, the interest chargeable would be considerably less. There was ample evidence, therefore, to show that this loan was usurious. Since appellee alone handled the distribution of the money actually loaned, in addition to being trustee under the chattel deed of trust, there was evidence from which the jury could have found that he knew the amount deducted in advance. This was sufficient to make the defense of illegality available to appellant against appellee.[5]

In support of his second point, that the corporation was in the business of lending money at a rate of interest greater than six per cent without the required license, appellant urges that the trial judge erred in excluding court files of five Municipal Court cases in which the corporation sued to recover on promissory notes assigned to it. The original notes in each of those cases were included in such files. Each of the five notes involved were assigned to the corporation on the same date as shown on the face of the note. Each was in the same form as the note involved in this case.

In three of the five promissory notes, the payee shown on the face of the note was Orleans and in the fourth appellee was the payee. The payees on these four notes endorsed the notes to the corporation without recourse. These circumstances coupled with Orleans' admission that he had never personally loaned money on a note and then taken it to the corporation for discount, provided ample evidence that the corporation was in the business of lending money rather than solely that of discounting notes, in the sense of buying from a creditor an *existing* obligation at less than face value. Thus the proffered evidence was material to appellant's defense and should have been admitted. With these Muncipal Court cases in evidence, appellant could have confronted Orleans with the notes and asked him how much money was actually loaned on each and thus established whether they too were usurious.

Throughout their testimony, appellee and Orleans variously and repeatedly described the corporation's part in the present transaction as discounting, buying, or purchasing the note. They used the same expressions in describing other corporation transactions. Thus, if the jury believed the present loan was a direct loan, then it could reasonably have inferred that these terms were used by the corporation officers as synonyms for direct loans to borrowers in other transactions. Appellee stated on cross-examination that "they (the corporation) had all sorts of arrangements in buying notes, and they had discounts anywhere from two per cent up to ten per cent." If the jury believed he used "discounts" in this general statement in the same sense that he used "discounts" in describing the transaction involved in this suit, the jury could have inferred the company was doing generally what it did here. A ten per cent discount, when applied to a direct loan, is the same as charging ten per cent interest in advance.

Appellee, Orleans, president of the corporation, and one Zoslow, another officer of the corporation at the time of this transaction, were served with subpoenas duces tecum to produce at the trial not only all papers pertaining to the loan to Hartman, but all records regarding the corporation and its transactions. Such records were sought to show amounts loaned as com-

---

4 Von Rosen v. Dean, 59 App.D.C. 359, 41 F.2d 982.

5 Hartman v. Lubar, supra.

pared with the face value of notes received. The only records produced at the trial were those introduced as appellee's exhibits, pertaining to the loan to Hartman. Neither Orleans nor Zoslow produced any records. Appellee testified that he did not know where other records of the corporation were. No adequate explanation was made as to what had become of the records of other transactions. The bank ledger sheets introduced by appellant showed a considerable volume of business. From the failure to produce the subpoenaed records the jury could have inferred that the contents thereof would have been unfavorable to appellee's case.

We conclude the trial judge erred, first, in excluding the evidence of the prior Municipal Court cases and, second, in directing a verdict for appellee.

Reversed with directions to award a new trial.