**HIGHPOINT TOWNHOUSES, INC. et al., Appellants,**

v.

**Lee RAPP, Sr., t/a Rapp Contracting Company, Appellee.**

**No. 79–296.**

District of Columbia Court of Appeals.

Argued Sept. 16, 1980.

Decided Dec. 3, 1980.

Mitchell Myers, Washington, D. C., with whom G. James Frick, Washington, D. C., was on the brief, for appellants.

L. David Ritter, Washington, D. C., for appellee.

Before MACK, FERREN, and PRYOR, Associate Judges.

FERREN, Associate Judge:

Highpoint Townhouses, Inc. (Highpoint) appeals a trial court order enforcing a subcontractor's mechanic's lien against its property filed by Lee Rapp, Sr., trading as Rapp Contracting Company (Rapp Co.). *See* D.C.Code 1973, § 38–101. Highpoint argues that Rapp Co. has no right to a mechanic's lien because its underlying claim is based on an illegal contract with the general contractor authorizing Rapp Co. to provide plumbing services without the required master plumber's license.[1] We agree; thus, we reverse.

## I.

On or about September 20, 1977, Rapp Co. contracted with Columbia Construction and Development, Inc. (Columbia) to do certain construction work on Highpoint's property, where Columbia, as general contractor, was building townhouses. The contract called for Rapp Co. to install a "water system," specifying the size and amounts of piping to be installed. Following completion of the work, Rapp Co. sent Highpoint notice of a mechanic's lien it had filed on the property.

At trial in a suit to enforce the lien, Lee Rapp, Jr. (Rapp), vice-president and super-intendent/foreman of Rapp Co., testified about the work performed under the contract, explaining that his company was to "install the sanitary sewer mains and the water mains." Moreover, according to Rapp, "[t]o the best of my knowledge . . . [w]e ran individual sewer and water services to each unit." Rapp's testimony, as well as Rapp Co.'s timesheets, confirmed that the work included excavation, laying pipe, and tying the system into the District mains. Specifically, Rapp stated that his company "did the whole on-site system before we did the tie-in," and that "[t]he actual water tie-in was performed by us."

Rapp admitted that neither Rapp Co. nor its employees had a master plumber's license: "we are not master plumbers, we are utility contractors ± ± ± ±" Rapp Co. and Columbia were conscious of this fact when they entered into the contract; because only a master plumber can obtain a permit to tap into the District mains, their contract specifically excluded the costs for a master plumber to "pull a permit." Columbia, therefore, contracted with James A. Federline, a master plumber, to obtain the permit. According to Rapp, however, "we [did the installation] under their permit" and had no contact with Federline.

The following colloquy between appellants' counsel and Rapp on cross-examination provides the clearest description of Rapp Co.'s relationship with the master plumber:

[RAPP]: It is an accepted practice for a plumber to pull the permit, and let us do the work, because the sanitary sewer was deep, they are not set up to do underground excavation the same way a utility contractor is.

[HIGHPOINT'S COUNSEL]: So, in this case, you required the acquiescence or authority of a master plumber to complete the job?

[RAPP]: The job required one; yes.

---

1. Highpoint also challenges the sufficiency of Rapp Co.'s description of the property in the Notice of Lien and the adequacy of one lien to cover separate buildings. In view of our con-clusion that the lien is improper because Rapp Co. was engaged in plumbing without a license, we find it unnecessary to reach these questions.

[HIGHPOINT'S COUNSEL]: Were you required by the master plumber to put up a bond covering your work?

[RAPP]: We were not. I had no contact with the master plumber at all on the job, with regards to that permit.

[HIGHPOINT'S COUNSEL]: Well, excuse me, Mr. Rapp, I don't want to get into this too deeply, but you're saying you acted under his authority, but you had no contact?

[RAPP]: I figured you'd take that. Now, look, what I am saying is this: We had nothing to do with the permit. Columbia knew that there had to be a permit drawn. Where they drew it from was not up to me. I merely did the installation work, and it so happened on this particular case, I believe that Federline [a master plumber] pulled the permit and it stopped at that. Federline had no contact with me. I had none with them.

## II.

Under D.C. Code 1973, § 2–1406, it is "unlawful for any person to engage in the work of plumbing or gas-fitting in the District of Columbia unless he is licensed . . . or is an employee of a licensed master plumber." According to D.C. Code 1978 Supp., § 2–1405, "[a]ny licensee may apply for and receive a license for or on behalf of any firm, copartnership, or corporation that he is a bona fide member of or a substantial stockholder in; but all plumbing . . . done pursuant to such license shall be done under the immediate personal supervision of the licensed man." The District of Columbia Plumbing Code, 5C DCRR §§ 101–817 (1972, with amendments through July 1979), defines "plumbing" to include the following functions:

all work done and materials used (1) in introducing, maintaining and extending a supply of water through a pipe or pipes, or any appurtenance thereof, in any building lot, premises, or establishment, whether from a public or private source of supply; (2) in connecting or repairing

any system of drainage whereby foul waste or surplus water, gas, vapor, or other fluid is discharged or proposed to be discharged through a pipe or pipes from any building, lot, premises, or establishment into any public or house sewer, drain, pit, box, filter bed, or other receptacle, or into any natural or artificial watercourse flowing through public or private property; (3) in ventilating any house sewer, or any fixture or appurtenance connected therewith; (4) in excavating in any public, or private street, avenue, highway, road, court, alley, or space for the purpose of connecting any building, lot, premises, or establishment with any service pipe, house sewer, public water main, public sewer, gas main, subway, conduit, or other underground structure; and generally (5) in performing all classes of work usually done by plumbers and drain layers including the removal of plumbing fixtures, pipes, and fittings, except as otherwise provided for in these regulations. [5C–2 DCRR § 115–1.]

The work that Rapp Co. performed under its contract—excavating and laying pipe for the purpose of connecting Highpoint buildings to the public water main, and actually connecting each unit to the public main—was well within this definition of plumbing. As is clear from Rapp's testimony, however, neither Rapp Co. nor any of its employees had a plumbing license. Nor was there any evidence that Federline or any other master plumber hired or supervised Rapp Co. The mere fact that Rapp Co. was working under a permit obtained by a master plumber does not, in itself, satisfy or excuse Rapp Co. from the licensing requirement; the issuance of a permit to Federline cannot mask the character of the work performed by Rapp Co.

Even were we to assume, solely for the sake of argument, that Rapp Co. would not violate the plumbing statute if its operations were "under the immediate personal supervision" of a master plumber, D.C. Code 1978 Supp., § 2–1405,[2] Rapp Co.'s lien could not be saved here, for it had no such

---

2. The public protection inherent in the plumbing licensing statutes arguably would be met by

an unlicensed subcontractor working "under the immediate personal supervision" of anoth-

supervision. In *La Covey v. District of Columbia*, D.C.Mun.App., 107 A.2d 374 (1954), the court concluded that although the concept of "immediate personal supervision" does not require "the constant presence of the master plumber at all times that the work is being done," it does require the master plumber to "devote sufficient time to the work to see that it complies with the plans and specifications and is done in accordance with the plumbing code. Merely instructing a foreman to do a good job does not meet the requirement of immediate personal supervision." *Id.* at 375.

The testimony of Rapp Co.'s own vice-president and foreman/supervisor clearly indicates that Rapp Co. was not acting under the supervision of Federline, the general contractor's master plumber. Rapp testified that his company performed all the installation work and "had no contact" with Federline. We hold, accordingly, that the trial court erred in concluding that Rapp Co. had not engaged in plumbing without a license.[3]

### III.

It follows that Rapp Co. is not entitled to a mechanic's lien. "[A] contract made in

violation of a licensing statute that is designed to protect the public will usually be considered void and unenforceable ...." *Truitt v. Miller*, D.C.App., 407 A.2d 1073, 1079 (1979) (unlicensed home improvement contractor cannot recover for work completed on contractual or quasi-contractual basis); *accord, Miller v. Peoples Contractors, Ltd.*, D.C.App., 257 A.2d 476, 477 (1969) (same); *Kirschner v. Klavik*, D.C.Mun.App., 186 A.2d 227, 229 (1962) (unlicensed architect denied recovery under Maryland law); *Holiday Homes, Inc. v. Briley*, D.C.Mun. App., 122 A.2d 229, 232 (1956) (architect denied recovery for period during which he had failed to renew architect's license); *Rubin v. Douglas*, D.C.Mun.App., 59 A.2d 690, 691 (1948) (patient can recover fee paid to unlicensed practitioner of "healing art"); *Hartman v. Lubar*, 77 U.S.App.D.C. 95, 96, 133 F.2d 44, 45 (1942), *cert. denied*, 319 U.S. 767, 63 S.Ct. 1329, 87 L.Ed. 1716 (1943) (unlicensed lender denied replevin of chattels securing note).[4] Accordingly, if the underlying contract to perform plumbing services is unenforceable, a mechanic's lien is also unenforceable.

---

er, licensed subcontractor. *See* D.C. Code 1978 Supp., § 2 1405 (licensed master plumber may obtain license covering his or her firm, copartnership, or corporation, provided "all plumbing" is carried out "under the immediate personal supervision" of the licensed plumber); *id.* 1973, § 2 1406 ("employee" of licensed master plumber may do plumbing); D.C. Plumbing Code, *supra* § 115 2 (all plumbing work included under § 115 1 shall be done "by a registered master plumber"); *cf. Cook v. James E. Griffith, Inc.*, D.C.App., 193 A.2d 427, 428 (1963) (in accordance with then applicable administrative regulations, layout or inspection of job by licensed plumber satisfies "immediate personal supervision" requirement).

3. Rapp Co. points out that it did the work under the scrutiny of a District of Columbia inspector. The presence of the inspector, however, does not relieve Rapp Co. of the licensing requirement. *Cf. La Covey, supra* at 375 (District plumbing inspector "never saw [master plumber] present when he visited the job").

4. The home improvement cases concern regulations that explicitly prohibit advance payment to an unlicensed contractor. *See Truitt, supra* at 1078; *Miller, supra* at 477. The other cited cases hold that the unlicensed person may not

recover even though the statute itself does not preclude compensation. *See Kirschner, supra* at 229 n.1; *Holiday Homes, Inc., supra* at 231; *Rubin, supra* at 691; *Hartman, supra* 77 U.S. App.D.C. at 96, 133 F.2d at 45.

Courts in this jurisdiction have refused, however, to extend this principle to related circumstances. Courts have thus permitted recovery when the licensing statute does not apply, *see*, e. g., *Dunn v. Finlayson*, D.C.Mun.App., 104 A.2d 830, 831 32 (1954) (unlicensed architect can recover on contract because statute regulating use of title "architect" does not regulate practice of architecture and subsequent statute regulating architectural design does not regulate supervision of construction), or when the party seeking recovery is licensed and has committed a violation only of other regulatory provisions. *See*, e. g., *Cook, supra* at 428 (even if licensed plumber committed technical violation of supervision requirement, he can recover in contract); *Murphy v. Mallos*, D.C.Mun.App., 59 A.2d 514, 516 (1948) (although statute expressly bars unlicensed broker from recovering commission, licensed broker who merely procures buyer without written listing from seller in violation of statute may recover commission).

Appellee, Rapp Co., contends, without citing authority, that Highpoint is estopped to deny it compensation for its labor and materials. Rapp Co. argues, in effect, an unjust enrichment theory, *i. e.*, that Highpoint acceded to the contract knowing that Rapp Co. did not have a master plumber's license and thus should not now be permitted to avoid paying for the work competed under the contract. This argument has two flaws. First, it glides over the fact that Rapp Co. was hired by the general contractor, Columbia, not by the owner-appellant, Highpoint, and that the record does not establish Highpoint's knowledge of the arrangement. Second, even if Highpoint could be charged with complicity in Columbia's contract with Rapp Co., this court consistently has ruled that, when a licensing law designed to protect the public is violated, the party contracting to provide services without the necessary license will not be permitted to recover, even though a member of the protected class of consumers was also a party to the contract. *See, e. g., Truitt, supra* at 1079–80; *Miller, supra* at 478; *Holiday Homes, Inc., supra* at 232; *Rubin, supra* at 691.[5]

*Reversed.*

---

**5.** If a party could recover for work performed without a necessary license, the purposes of licensing statutes, generally speaking, would be frustrated. *See* 15 S. Williston, A Treatise on the Law of Contracts § 1787, at 354 (3d ed. 1972) ("it is entirely immaterial that the defendant in fact has been benefited if the bargain is of a seriously illegal nature or is prohibited by statutes") (footnote omitted). *But cf. William J. Davis, Inc. v. Slade*, D.C.App., 271 A.2d 412, 416 (1970) (tenant can recover rent paid under lease void because of housing code violations, but landlord is entitled to setoff under theory of quasi-contractual recovery for "reasonable value" of premises as occupied). We recognize that, under certain limited circumstances, this rule may result in a windfall to the party seeking to avoid the contract. *See* *Town Planning & Eng'r. Assocs., Inc. v. Amesbury Specialty Co.*, 369 Mass. 737, 746, 342 N.E.2d 706, 712 (1976) (whether violation of licensing statute prevents recovery of compensation on contract depends on subject matter of contract, extent and materiality of illegal behavior, strength of underlying public policy, and fairness to parties); 6A A. Corbin, Corbin on Contracts § 1512, at 713 (1962) ("justice and sound policy do not always require the enforcement of licensing statutes by large forfeitures going not to the state but to repudiating defendants"). Nonetheless, we are bound by the strict rule denying recovery to unlicensed contractors that this court has long followed. *See* *M. A. P. v. Ryan*, D.C.App., 285 A.2d 310, 312 (1971); *cf.* note 4 *supra*.