## JONES *v.* DANNENBERG COMPANY.

It is both an illegal and an immoral act to make an agreement for a consideration to suppress the prosecution of a criminal offense, whether the offense be of the grade of felony or misdemeanor; and the fact that a note and mortgage were executed by a wife and delivered to the payee of the note on consideration that he would cease to prosecute, and would settle a criminal offense for the commission of which the husband was at the time under arrest on a warrant sued out by such payee, may be pleaded and proved as a defense to the foreclosure of the mortgage so given, even in the hands of one who is the bona fide holder of such note for value, before due, and without notice.

Argued December 3,—Decided December 19, 1900.

Foreclosure of mortgage. Before Judge Littlejohn. Sumter superior court. November term, 1899.

*J. B. Pilsbury* and *Allen Fort*, for plaintiff in error.
*Greer & Felton, J. A. Hixon*, and *Hall & Wimberly*, contra.

LITTLE, J. The defendant in error filed a petition, under which a rule nisi issued, to foreclose a mortgage given by the plaintiff in error to secure a promissory note executed by her. It appears from the petition that the note and mortgage were executed on the 24th day of February, 1897; that one L. Frieden was the payee of the note and the grantee in the deed of mortgage, and that on the 4th day of March, 1897, Frieden sold and delivered the note to the defendant in error, and, on the same day, transferred, sold, and assigned the mortgage to the same party; and that the note was for the principal sum of six hundred dollars to become due on August 1, 1897. The rule having been issued and served, Mrs. Jones answered and averred, among other things, that she did give the

note and execute the mortgage to Frieden, but she denied that at the time of the execution of these papers she was indebted to Frieden in any amount. She averred that at the time she signed the note and mortgage her husband, J. W. Jones, was under arrest, and placed so by Frieden, who threatened to put her husband in jail if she did not give the note and mortgage; and they were executed and delivered for the sole purpose of keeping her husband out of jail, and not in settlement of any debt which she owed, or was legally bound to pay; that the note was given to stop a criminal prosecution against her husband, J. W. Jones, and on the agreement that the warrant then held against her husband would be dismissed and he would not be prosecuted further; and that the same was illegal and void. On the trial of the issue thus raised, the defendant offered to prove by herself the statements made in her answer. This evidence the court excluded as irrelevant and immaterial. Defendant also introduced Odum, who testified that he was an officer, and had Jones in custody at the time the note and mortgage were executed; and offered to prove by him that as an arresting officer he had J. W. Jones in custody under a criminal charge, and was about to carry him to jail; that it was suggested by Frieden or his attorney that they see Mrs. Jones and see if they could not get the matter settled; that it was settled by her signing the note and mortgage; and that then the warrant was dismissed and Jones was released; and but for this settlement Jones would have been put in jail under the criminal warrant under which he was arrested. The court refused to permit this evidence to be introduced, because it was irrelevant and immaterial. The defendant having closed, the court directed a verdict for the plaintiff, and entered up judgment accordingly. To the verdict and ruling of the judge the defendant excepted, and assigns as error the refusal of the court to allow Mrs. Jones and Odum to testify as above set out, and the ruling that the plaintiff in error could not set up the defense sought to be made, and in directing a verdict.

It must be conceded that the rights of the defendant in error in this case are to be determined from his status as a bona fide holder for value. There was direct proof of this fact, which was in no way contradicted. But, in the absence of proof, the provision of our law found in the Civil Code, § 3696, makes him such, the presumption being, where the holder is one other than the original

payee, that such an one became such bona fide holder prior to the maturity of the paper. *Paris* v. *Moe*, 60 *Ga.* 90; *Georgia National Bank* v. *Henderson*, 46 *Ga.* 487. Such being the case, our next inquiry leads to the question as to what defenses the maker of the instrument may set up against a bona fide holder. This inquiry is answered by the provisions of the Civil Code, § 3694, which declares that such a holder without notice shall be protected from any defenses set up by the maker, acceptor, or indorser, except non est factum, gambling, or immoral and illegal consideration, or fraud in its procurement. The defense set up by the plea, as well as the evidence offered to support it, excludes from consideration all of these defenses except that of immoral and illegal consideration; and the direct question which arises is, whether or not the facts averred in the plea, and offered to be proved, tend to show that the consideration of the note and the mortgage given to secure its payment was immoral and illegal. If so, then, notwithstanding the fact that the defendant in error was a bona fide holder for value, before due, and without notice, the note and mortgage would be void in his hands. It is no defense against such a holder that the note given was an assumption of the debt of the husband. *Southern Mutual Building and Loan Association* v. *Perry*, 103 *Ga.* 800. But the issue is still further narrowed to the question whether the averments of the plea set up a contract the consideration of which was both immoral and illegal. It will be noted that the statute requires these two conditions to exist conjointly, to let in the defense. As was said in the opinion in the case of *Rhodes* v. *Beall*, 73 *Ga.* 641, "the statute which makes such a contract illegal and void must also make the same a crime, or the act itself must be immoral and *contra bonos mores.*" An examination of the plea discloses the fact that its averments do not designate the offense for which the husband of the plaintiff in error was arrested, nor can we gather from it the nature of the crime with which he was charged. It may have been a felony, and, equally as well, it may have been a misdemeanor. Indeed, as the plea does not allege that the charge was a felony, the compounding of which under the law is a felony itself, it is but fair to assume that it was not. It will be further noted that there was no demurrer to this plea, or answer; and if it had been desired by the plaintiff below, for any purpose, that the nature of the offense for which the husband of the defendant had been

arrested should more specifically be set out in the plea, this purpose could have been accomplished by a demurrer; but, in the absence of a demurrer, the question for consideration is whether the averments in the plea are sufficient to establish the proposition that the act which she charges to have been the consideration moving her to execute the note and mortgage was illegal and immoral. She distinctly alleges that her husband had been placed under arrest by the payee of the note; that he was threatening to put him in jail if she did not execute the note and mortgage, which were given to prevent that action, and to stop a criminal prosecution against her husband; and they agreed that, if she did so, they would dismiss the warrant and would not prosecute him.

Section 324 of the Penal Code prescribes: "If any person, informing or prosecuting under pretense of any penal law, shall compound with the offender, or direct the suit or information to be discontinued, unless it be by leave of the court where the same is pending, he shall be guilty of a misdemeanor." This section was referred to by Chief Justice Simmons in the case of *Harris* v. *Webb & Rutledge*, 101 *Ga.* 84; and it was there ruled that it was an illegal act for the creditor and husband to arrange that the former should have certain property of the wife for the purpose of settling the debt of her husband and thereby suppressing a criminal prosecution against him. Section 956 of the Penal Code provides that all cases of indictments or special presentments shall be submitted to a jury, unless there is a settlement between the prosecutor and the defendant, which settlement shall be good and valid only by the approval and order of the court. This is very general, and its meaning not very plain. Under the literal reading of this section, its provisions are not restricted to misdemeanors, but would seem to apply as well to all classes of felonies. We take it, however, that it refers to such cases as are authorized by law to be settled between the prosecutor and the defendant, but by its terms such settlement is confined to cases in which indictments or special presentments have been returned. By the provisions of section 3894, an injured person may consent to the satisfaction and settlement of a tort, but where the tort amounts to a crime the injured person may only receive compensation for the personal injury; and it is expressly provided that any attempt to satisfy the public offense or to suppress a prosecution therefor is illegal and vitiates the

entire agreement, except where the law allows such settlement expressly. This provision of law is not confined to a felony; because the succeeding section declares: "If the offense sought to be satisfied, or the prosecution sought to be suppressed, amounts to a felony, the agreement itself is an offense under the Penal Code." So that, under these provisions, it is illegal for any person, though he be the injured one, to satisfy a public offense amounting only to a misdemeanor, or to suppress a prosecution therefor, except where the law expressly allows such settlement. Mr. Greenhood, in his Treatise on the Doctrine of Public Policy in the Law of Contracts, page 457, says: "A distinction has been attempted between promises given on the settlement of misdemeanors before prosecution and those given in consideration of forbearance to begin prosecutions for felonies, the former being deemed good. It is claimed that there is a great distinction between compounding a prosecution already begun for a misdemeanor, and promising not to begin one for the same offence. As no agreement is repudiated except because its object is to prevent the consummation of justice, it is difficult to understand why justice is not defeated as effectually by agreements to conceal misdemeanors as by contracts to suppress prosecutions already begun. The distinction has no foundation in principle, and, as may be observed from the results of many of the cases already referred to, the distinction has met with very little favor in the courts." In the case of *Wheaton* v. *Ansley,* 71 *Ga.* 35, it was ruled by this court that if a mortgage was given to settle or suppress a criminal prosecution, it could not be collected, but that if it was given to secure what the defaulting agent owed his principal, it could be collected.

So that we think that if we confine the averments made in the plea to their narrowest limits, and assume, because it was not otherwise pleaded, that the criminal offense for the settlement of which it is averred that the note and mortgage were given was a misdemeanor, then the consideration was an illegal one. Was it an immoral one in the sense of the statute? One of the definitions of "immoral" given in the Standard Dictionary is "hostile to the welfare of the general public." And Mr. Bouvier defines immorality to be "that which is contra bonos mores;" and in defining what contracts are contra bonos mores, the same author says, among other things which he names, that those which have a tendency to

mischievous or pernicious consequences are void as being contrary to good morals. Chief Justice Marshall would seem to include in this definition the settlement or suppression of a criminal prosecution. He says: "It is the interest of the Commonwealth, and the policy and intention of the law, and is essential to public order and individual security, that the laws against offences injurious to the public should be fairly administered and enforced. . . . The Commonwealth has a right to rely upon the individual who has received special injury from the commission of a public offence, as the special instrument for its ascertainment and punishment in the due course of law. The particular interest which he may be supposed to feel in bringing the offender to justice is one of the securities on which the public relies, and has a right to rely, for the enforcement of the laws and its own safety; and an agreement by which this interest is turned against the Commonwealth is in violation of her rights and policy." Gardner v. Maxey, 9 B. Mon. (Ky.) 91. On the particular point as to whether the suppression of a public offense is immoral, Ryan, C. J., in the case of Wight v. Rindskopf, 43 Wis. 361, says: "Compounding a public offense, felony or misdemeanor, is essentially immoral, not *malum prohibitum*, but *malum in se*; proceeding upon 'a wicked consideration;' 'to gild over and conceal the truth.'" It must, therefore, be concluded that an agreement to suppress or discontinue a prosecution for a criminal offense, be it a felony or misdemeanor, except alone in those cases which are allowed by the statute to be settled, is both an illegal and an immoral act; and, if such an act be the only consideration for an obligation to pay money, or for the creation of a lien to secure the payment of the sum promised, that not only is such consideration illegal, but it is also immoral; and being so, it may be pleaded when either of these instruments is sought to be enforced, even against a bona fide holder for value and without notice. If this be a correct conclusion, it must follow from what has been said that the court erred in excluding the evidence of Mrs. Jones and Odum, and in directing a verdict for the plaintiff. Although the particular agreement which it was alleged the obligation was given to settle was not fully set out, it was, in the language of the plea, a criminal offense.

*Judgment reversed. All concurring, except Fish, J., absent.*