THE ELTON.

(District Court, E. D. Pennsylvania. August 2, 1904.)

No. 7.

1. SHIPPING—INJURIES TO STEVEDORES—NEGLIGENCE.

Plaintiff, an employé of the stevedore engaged in discharging a vessel, was injured by the sudden descent of a tub loaded with iron ore after it had been raised about 14 feet. The tub was raised by means of a steam winch in charge of a seaman who had knowledge that men were working below, and that a sudden lowering of the bucket for the entire distance would probably result in injury to them. He was in the habit, after raising the bucket part way, to lower it a few feet, to steady it, but in this instance it descended suddenly, as if it "had been dropped." The signalman testified that proper signals were given, but that the winchman disregarded the signals, and by mistake pulled the lever to lower the bucket. He, however, testified that he received the wrong signal. *Held*, that the injury was occasioned by the negligence of the winchman.

2. SAME—INCOMPETENT SERVANT.

Where a negligent person is placed by a master in a position requiring care and caution, such person is incompetent, and the master is liable therefor.

3. SAME—FELLOW SERVANTS.

A sailor placed at the winch by the officers of a vessel, in compliance with the charter party requiring the ship to furnish cranes and winches, with necessary steam power and hands for unloading, is not a fellow servant of the employés of a stevedore engaged in discharging the vessel.

In Admiralty.

Samuel M. Clement, Jr., and Allen C. Thomas, for libelant.
Convers & Kirlin and John Munro Woolsey, for respondent.

HOLLAND, District Judge. In accordance with the provisions of a charter party, the steamer Elton, on the 17th of July, 1902, was lying at pier No. 14 on the Delaware river, in Philadelphia, Pa., discharging a cargo of iron ore shipped from Antwerp. Peter Bellew was an employé of stevedore Boney, who at the time was discharging the cargo. Bellew, on the above-mentioned date, was working in the hold of the vessel, inshore side of hatch No. 3, filling ore into tubs, which were raised by means of a chain working on a pulley from a boom and propelled by a steam winch, managed by William Flinn, a sailor, placed at that work by the first mate of the vessel. About 10 o'clock on above date the libelant was injured by the rapid descent of one of the filled tubs. It had been raised about 14 feet, and of a sudden descended as if it "had been dropped," on the inshore side, where libelant was working. He was struck in the breast, and his legs and back were injured. He was taken to the hospital, where he regained consciousness about 12 o'clock. As a result he has not been able to work since that time, and has not yet fully recovered. At the date of the injury he was 41 years of age, of stalwart physique, able and was

¶ 3. Who are fellow servants, see notes to Northern Pac. R. Co. v. Smith, 8 C. C. A. 668; Canadian Pac. Ry. Co. v. Johnston, 9 C. C. A. 596; Flippin v. Kimball, 31 C. C. A. 286.
See Master and Servant, vol. 34, Cent. Dig. § 485.

earning $3 per day. The evidence shows that he will not hereafter be able to do work of the kind in which he was theretofore engaged, but will be required to seek employment requiring less physical exertion. A libel was filed in the sum of $5,000, and it is sought to hold the vessel responsible for this injury. It charges that "the master had knowledge that said gaft or boom was constructed in an unsafe manner, and the man in charge of lowering the buckets or tubs was an inexperienced and incompetent person. The libelant exercised due care and precaution, and in no manner contributed to the said injuries, but the same were solely caused by the negligence and carelessness of the respondents in improperly constructing the boom or gaft, and in allowing the same to be managed by an incompetent and inexperienced person." The answer denies negligence or carelessness on the part of the respondents, and denies that the boom or gaft was improperly constructed, or that the same was managed by an incompetent and inexperienced person.

Upon the pleadings it is contended the libelant is confined to the allegations of fault contained in the charge of negligence on the part of the respondents, due to the danger of having improperly constructed the boom or gaft, and in allowing the same to be managed by an incompetent and inexperienced person. In other words, he is required to prove that his injury resulted from the negligence of the shipowners and the inexperience and incompetency of the winchman; and, further, that if the question of the negligence of the winchman is an issue raised by the pleadings, and the injury resulted from that cause alone, the libelant cannot recover, as Flinn, the man managing the winch at the time, was a fellow servant, for whose negligence the respondents are not responsible. William Flinn was a seaman on board the Elton, and was placed at the winch by the first mate, in accordance with the requirements of the charter party under which the cargo was shipped and was being discharged requiring "the vessel to deliver the cargo to the consignee at Philadelphia, * * * paying for discharge thirty-five cents per ton, * * * and to furnish cranes and winches with necessary steam power and hands." One of the stevedore's men was placed at the opening of the hatch in a position to see in the hold, and to signal the winchman when to lower and raise the tubs. There is a conflict of evidence as to the cause of the accident. It was customary, in raising a filled tub, for the man to signal the winchman to go ahead. After raising the same some distance to stop the swing of the tub, he was signaled to lower a few feet, where the tub was steadied. He was then signaled to go ahead, when the tub was raised clear of the vessel. The signalman claims that the signals were properly given, but were disregarded by the winchman, who made a mistake, and carelessly pulled his lever to lower the bucket when he signaled him to go ahead. The winchman, however, denied this, and claims that he received the wrong signal. I find, however, from all the evidence and circumstances, that this injury resulted from the negligence of the winchman. It is clear to my mind that, if he had been attending carefully to his duties, he would not have allowed this bucket to descend the entire distance as if it "had dropped." He knew the men were working below, and in

lowering a few feet to steady the bucket he must have known required caution, and that a sudden lowering for the entire distance would in all probability injure some one below. It is evident that he negligently pulled his lever to lower the bucket, when he should have raised it; so that I find that the injury was the result of the negligence of the winchman. The winchman was the representative of the respondents, placed there by the first mate, in accordance with the provisions in the charter party, and the libel charges them with negligence and carelessness in placing an incompetent and inexperienced person at the winch. We are of opinion that a negligent person at a position requiring care and caution is incompetent. Incompetency includes want of qualification generally, and we hold that the question of the winchman's negligence is an issue fairly raised by the pleadings, and for which the respondents are responsible, if he is not a fellow servant.

The question as to whether he is a fellow servant has been passed upon so frequently and so recently that I shall only refer to the cases which I think settle that question against the claim of the respondents. McGough v. Ropner (D. C.) 87 Fed. 534, was a case decided in this district, in which the facts are almost the same as the facts in this case. Numerous cases are there cited to sustain the proposition that a sailor placed at the winch by the officers of a vessel is not a fellow servant of the employés of a stevedore. To the same effect are The Slingsby, 120 Fed. 748, 57 C. C. A. 52, and The Gladestry (C. C. A.) 128 Fed. 591, both of which cases are decisions of the Circuit Court of Appeals of the Second District.

The libel must, therefore, be sustained, and a decree may be entered accordingly.