E. P. WILBUR TRUST COMPANY, Appellant, v.
FAHRENDORF, et al, Respondents.

(265 N. W. 1.)

(File No. 7829.   Opinion filed February 5, 1936.)

*Mason & Thurow*, of Aberdeen, for Appellant.
*Churchill & Benson*, of Huron, for Respondent.

RUDOLPH, J.   Plaintiff brought this action to recover upon
a certain note made, executed, and delivered by one W. H. Schafer,
and indorsed by the defendants.   The case was tried to a jury,
and verdict and judgment were rendered in favor of defendants.
Plaintiff has appealed from the judgment only.

■ Plaintiff moved for a directed verdict which was denied, and after the verdict for judgment notwithstanding the verdict, which was also denied. These motions and their denial permit us to consider the sufficiency of the evidence to support the verdict upon this appeal from the judgment. Warwick v. Bliss, 45 S. D. 388, 187 N. W. 715; Hoidal v. Runchey, 55 S. D. 171, 225 N. W. 299. The principal defense to the note was that it was induced to be given under an agreement, on the part of the payee, not to prosecute Schafer for an alleged embezzlement. The assignment of error raises two questions regarding the sufficiency of the evidence: First, it is alleged that the evidence is insufficient to support the verdict because there is "no evidence that at the time the said contract was entered into any prosecution was pending or any crime had been committed which could have been compounded in the transaction in which the note in suit was taken"; second, it is alleged the evidence is insufficient to support the verdict because "it was clearly proven by uncontroverted evidence that the plaintiff is a holder in due course in the note sued upon."

■ We take up first the question of whether it is necessary to prove that a crime had actually been committed in order to sustain the defense. It is the position of the appellant that in order to invalidate the note upon the grounds of the pleaded defense, the defendant must establish either that a prosecution against Schafer had been begun and dismissed upon the giving of the note; or, second, in the absence of prosecution actually begun, the defendant must prove that Schafer had in fact committed a felony, and the further agreement not to prosecute. There is no contention here that the evidence is insufficient to support a finding by the jury that there was in fact an agreement not to prosecute, which induced the giving of the note. The only contention is that, without proof of a felony having actually been committed, or without proof of prosecution actually having been begun, the agreement not to prosecute, which induced the giving of the note, in itself is insufficient to invalidate the note. The very contention raised by the appellant in this case was before the New York Court of Appeals in the case of Union Exchange National Bank of New York v. Joseph, 231 N. Y. 250, 131 N. E. 905, 906, 17 A. L. R. 323. We quote at length from the opinion in the New York case:

"The contract is not helped by the suggestion that, for all that appears, Bloch may have been innocent. That issue, beyond doubt, would be irrelevant if prosecution had begun. Gorham v. Keyes, 137 Mass. 583, 584; Stuben County Bank v. Mathewson, 5 Hill, 249. We are asked to hold otherwise where prosecution is merely threatened. Some cases do, indeed, give effct to that distinction. The prosecution, once initiated, they say, must be left to take its course; the prosecution, merely threatened, may be bought off, if directed against innocence. Cowen, J., so held in 1843, upon a trial in the Supreme Court. Steuben County Bank v. Mathewson, supra. His decision has been followed in some jurisdictions (Man ning v. Columbian Lodge, 57 N. J. Eq. 338, 38 A. 444, 45 A. 1092; Schultz v. Catlin, 78 Wis. 611, 47 N. W. 946; Woodham v. Allen, 130 Cal. 194, 62 P. 398; Rieman v. Morrison, 264 Ill. 279, 285, 106 N. E. 215; Deere v. Wolff, 65 Iowa, 32, 21 N. W. 168), and rejected elsewhere (State v. Carter, 69 N. H. 216, 219, 39 A. 973; Koons v. Vauconsant, 129 Mich. 260, 88 N. W. 630, 95 Am. St. Rep. 438; Jones v. Dannenberg Co., 112 Ga. 426, 430, 37 S. E. 729, 52 L. R. A. 271). We think it has not been law in this state since the ruling of this court in Haynes v. Rudd [102 N. Y. 372, 7 N. E. 287, 55 Am. Rep. 815], supra. There the plaintiff gave his note under duress to stifle a prosecution threatened, but not begun. We approved a charge that 'an agreement to suppress the evidence of a crime alleged to have been committed' was as illegal as one 'to suppress the evidence or refrain from prosecuting a crime which had been in fact committed.' In so far as Steuben County Bank v. Mathewson, supra, is to the contrary, it was thereby overruled.

"The principle thus vindicated is simple and commanding. There is to be no traffic in the privilege of invoking the public justice of the state. One may press a charge or withhold it as one will. One may not make action or inaction dependant on a price (Jones v. Merionethshire Permanent Ben. Bldg. Soc. [1892] 1 Ch. 173, 183, 61 L. J. Ch. N. S. 138, 65 L. T. N. S. 685, 40 Week. Rep. 273, 17 Cox C. C. 389). The state has, indeed no interest to be promoted by the prosecution of the innocent. Steuben County Bank v. Mathewson, supra [5 Hill, 249] at pages 252, 253; Manning v. Columbian Lodge, supra. That consideration, if it were controlling, is as applicable to agreements to discontinue as

to agreements to abstain. The state has an interest, however, in preserving to complainants the freedom of choice, the incentives to sincerity, which are the safeguards and the assurance of the prosecution of the guilty. Gorham v. Keyes, supra; Partridge v. Hood, 120 Mass. 403, 405, 21 Am. Rep. 524; Jones v. Dannenberg Co., 112 Ga. 426, 430, 431, 37 S. E. 729, 52 L. R. A. 271; Keir v. Leeman, 6 Q. B. 308, 115 Eng. Reprint, 118, 13 L. J. Q. B. N. S. 259, 8 Jur. 824. Innocence will strangely multiply when the accuser is the paid defender. In such matters, the law looks beyond the specific instance where the evil may be small or nothing. It throttles a corrupting tendency."

We approve the reasoning of the New York court and hold that an instrument given under an agreement to suppress a criminal prosecution is void as between the parties without reference to the guilt or innocence of the threatened person. We appreciate that some courts hold otherwise. However, we believe the better rule, and the rule now sustained by the majority of courts, to be the rule herein adopted. See cases cited in the annotation appearing in 17 A. L. R. 325.

Appellant argues that under our statute, section 3778, R. C. 1919, proof of actual commission of a crime is necessary to sustain a criminal conviction for compounding a crime. In this respect we see no distinction between our statute and the New York statute upon the subject. See section 570, Gilbert's Penal Law of New York. The words of the Iowa court in the case of Shaulis v. Buxton, 109 Iowa, 355, 80 N. W. 397, 399, are applicable. The Iowa court said: "If, as is argued, there was no felony proven and therefore no felony to compound, and if the defendant was acquitted, still public policy forbids such contracts, and therefore they are void." See, also, W. T. Joyce Co. v. Rohnan, 134 Iowa, 12, 111 N. W. 319, 120 Am. St. Rep. 410. The Iowa statute upon the subject is in words practically the same as our section 3778. See section 13168 Code of Iowa.

We hold therefore that under the facts here disclosed the contract sued upon was against public policy, and within the prohibition found in section 892, R. C. 1919. This being true, this court will not employ its functions to aid either party to this void transaction. This court in the case of Minnesota, D. & P. R. Co. v.

Way, 34 S. D. 435, 148 N. W. 858, 859, L. R. A. 1915B, 925, said: " 'If the consideration is to do something opposed to public policy, it is illegal and absolutely void however solemnly made. If a court should enforce such an agreement it would employ its functions in undoing what it was created to do. It is not easy to give a precise definition of public policy. It is perhaps correct to say that public policy is that principle of law which holds that no person can lawfully do that which has a tendency to be injurious to the public, or against the public good, which may be designated, as it sometimes has been, the policy of the law or public policy in relation to the administration of the law * * *. The law looks to the general tendency of such agreements, and it closes the doors to temptations by refusing them recognition in any of its courts.' "

■■ Appellant next contends that the uncontroverted evidence establishes that the plaintiff is a holder in due course of the note in suit, and that it follows that the pleaded defense is not available against it. We are of the opinion that the evidence was sufficient to submit to the jury the question of whether or not the plaintiff was a due-course holder. By its verdict the jury has resolved this question against appellant, and it, therefore becomes unnecessary for us to consider the further question of whether the pleaded defense would be available to these defendants as against this note in the hands of a holder in due course. The evidence was substantially as follows: A man by the name of Van Sciver induced the giving of the note. The note was made payable to the Oil Electric Engineering Corporation, and was due on November 7, 1933. Van Sciver's home was in Philadelphia, Pa. At the time the note was given Van Sciver was the holder of practically all of the stock of the Oil Electric Engineering Corporation. After the giving of the note, all of the stock of the Oil Electric Engineering Corporation was absorbed by the Bethlehem Foundry & Machine Company, located in Pennsylvania. The president of the plaintiff corporation, who claims to have personally handled the transaction wherein the plaintiff acquired the possession of the note, was a stockholder and a member of the board of directors of the Bethlehem Foundry & Machine Company, as was also Van Sciver. An employee of the plaintiff corporation testified that the note in suit first came into the possession of the plaintiff corporation as a col-

lection item on November 1, 1933; that it was forwarded in the usual channels for collection; that on November 6, 1933, the day before the note was due and while it was out of the possession of the plaintiff and in the hands of the collecting agents, this employee was notified by the president of the plaintiff company, the associate of Mr. Van Sciver on the board of directors of the Bethlehem Foundry & Machine Company, to credit the account of the Oil Electric Engineering Corporation with the amount of the note. The plaintiff never made any attempt to collect this note from the Oil Electric Engineering Corporation, from whom it purchased this note, and which corporation according to the testimony was responsible and located in the same city as the plaintiff corporation, but proceeded against these two defendants, residents of South Dakota. It also appears from the evidence that at the time the note in suit was given, there was given what was called a "companion note," which note was given under the same circumstances but due one year prior to the due date of the note in suit. Suit had been commenced on the companion note before the alleged transfer of this note to the plaintiff corporation and Van Sciver and the Oil Electric Engineering Corporation were advised in that suit that these defendants claimed the whole transaction, under which the notes were given, illegal and void. We think under these circumstances that the trial court was amply justified in submitting to the jury the good faith of the plaintiff corporation in the taking of this note. See section 1756, R. C. 1919. The test for submitting a question of this character to the jury is whether the evidence offered as to the ultimate facts is such that by the application of normal, intellectual faculties thereto, reasonable men might by the customary and normal processes of reasoning arrive at different judgments or conclusions. Jerke v. Delmont State Bank, 54 S. D. 446, 223 N. W. 585, 72 A. L. R. 7. The rule and its application were fully and clearly enunciated in the opinion in this last-cited case. Applying the reasoning used in that opinion to the fact situation here presented, we are of the opinion that the trial judge pursued the only proper course when he submitted the question to the jury.

The judgment appealed from is affirmed.

All the Judges concur.