## Vasbinder's Appeal

*Thomas G. Gregory* and *B. R. Coppolo*, for appellant.
*George S. Rupprecht* and *Charles I. Houston*, for school district.

RIMER, P. J., eighteenth judicial district, specially presiding, September 2, 1937.—In this case Mr. C. W. Vasbinder, a professional employe of the School District of the Borough of St. Marys, presented to this court his petition for an appeal to the court upon the ground that he was aggrieved by the action of the board of directors of the school district in refusing to reëlect him and renew his contract as a professional employe of the school district. This appeal is under section 1205 (*j*) of the School Code of May 18, 1911, P. L. 309, as amended by the Act of April 6, 1937, no. 52, sec. 2. Under the provisions of this section, appellant requested that the hearing upon appeal be "de novo", and it was so ordered.

In determining the issue we refer to the charges appearing in a letter from the board to appellant under date of May 14, 1937, answering his request contained in a letter to the board under date of May 12, 1937, both of

which appear in the record. Briefly speaking, the complaint on the part of the board was that this professional employe, having taken over the handling of moneys in connection with certain class plays of the senior high school class of that district, held on April 15 and 16, 1937, failed to account for the funds received from the members of that class, it being alleged that the amount actually received was more than $60 and the amount accounted for was only $27.90. There is an additional charge suggesting that threats had been made to two members of a committee from the senior class, called to a meeting by appellant shortly after the date of the class plays, threatening two of them with arrest for libel if the matter was not dropped within 48 hours. The evidence before the board and the further action of the board are not pertinent to the determination of this case, since the matter was taken up de novo and we only mention the fact that, after hearing, the school board, on June 19, 1937, notified appellant that it had been determined that the charges above referred to had been sustained and that, therefore, the board refused to reëlect appellant and to renew his contract with that school district.

This leaves it largely a question of fact, in the first instance, to be followed by the determination of these proceedings under conclusions of law applicable thereto. From the evidence before the court the following facts are found:

### Findings of fact

1. On and prior to May 6, 1937, appellant was a professional employe of the School District of the Borough of St. Marys, under a contract with the district dated September 8, 1931.

2. On May 6, 1937, appellant was notified by the school district of its refusal to renew his teaching contract for the session of 1937-38, assigning general reasons therefor, and advising that a hearing would be given to him upon request in writing.

3. By letter of May 12, 1937, appellant acknowledged such notice and requested the board to comply with the provisions of section 12 (*d*) of the Act of April 6, 1937, supra.

4. By letter of May 14, 1937, the board fixed a hearing, in response to the above request, for May 27, 1937. This notice, in substance, charged appellant with failure to account for monies received by him from students of the high school class of 1937 in said district for the advance sale of tickets to high school plays therein referred to, and with threatening to have certain members of the student committee from said class, called by him to meet at his home, arrested for libel if they did not drop the matter in question.

5. After hearing, the board found by a two-thirds vote of the members thereof that the aforesaid charges had been sustained by the evidence offered at the hearing, and refused to reëlect appellant and to renew his contract with the district.

6. The high school class of 1937 in the School District of St. Marys gave a school play or plays on the nights of April 15 and 16, 1937, and tickets therefor were sold in advance by members of the class and others.

7. Appellant undertook to coach members of the senior class for the plays upon the condition, required by him, that he would handle the money derived from the plays, because of the fact that in former years bills for plays of like character had remained unpaid, and this condition was made so that he could see that all bills were paid.

8. Tickets for the plays were issued by appellant to various members of the high school class and others, the individual members being charged with such tickets thus issued to them and to be sold by them upon a ledger sheet kept by appellant, upon which there was also noted by way of account with each student selling tickets, the number of tickets returned and the amount of money turned in to him by each student.

9. A report was made by appellant under date of April 22, 1937, which is headed "Senior Play 1937". It shows the amounts alleged to have been received, the amounts of the several expenditures in respect to the play, and a distribution of the balance. We are only concerned with the amount which is designated "Advance $27.90". This item represents the amount of money which appellant reported to the class he had received from the students making sale of the tickets to the plays.

10. From the evidence it appears that there had been paid to appellant by the various students of the high school proceeds from the sale of tickets to said plays, $65.90.

11. The record mentioned in the eighth finding was not in evidence in the case, evidence being offered on the part of appellant that it had been accidentally destroyed by fire on the evening of April 19, 1937, at which time the report above referred to was made by appellant, said record having been referred to throughout the hearing as the "ledger sheet".

12. At a meeting of a committee from the high school class, called by appellant at his home on April 25, 1937, appellant notified two members of the committee that if they didn't stop talking about him in public places and saying things that were not true he would sue them for libel within 48 hours.

13. The duties assumed by appellant in respect to taking charge of these high school plays, although not specifically duties under his contract, were customary duties in connection with his employment.

14. The duties thus assumed by appellant in respect to taking charge of, handling, keeping records of and reporting the financial matters relating to the class plays above mentioned were by him incompetently performed.

15. The acts and omissions of appellant in this case were hostile to the welfare of the general public as repre-

sented particularly by the students of the high school in which he was employed.

16. Appellant in this case was wanting in the business qualifications requisite to a proper conduct of the control and management of the funds arising from the class plays in question.

### Conclusions of law

1. Under the evidence in this case, the services of the professional employe in respect to his charge and control of and accounting for the moneys coming into his hands from the class plays mentioned were incompetently performed, his acts showing a want of ability suitable to the task in question and a want of the requisite qualifications for performing such services.

2. The acts of the professional employe in respect to his charge and control of the financial matters in said school plays and his accounting therefor constituted an immoral act in that the same was hostile to the welfare of the general public as represented by the students of the high school class of 1937 in said school district.

3. Under the evidence in this case, the action of the board of school directors in refusing to reëlect the professional employe and renew his contract with the district for the school year of 1937-38 must be affirmed and said professional employe refused reëlection.

### Discussion

It is only after a most careful consideration and reluctantly that the court has found the facts in this case as above. A most favorable impression of respondent was created in the mind of the court at the hearing, because of his apparent frankness, manner of testifying and general appearance. But it was clearly evident that, because of inexperience and lack of business ability, so common amongst the members of most professions, he was responsible for a situation which rendered his further continuance as a member of the teaching staff

in that school district strongly adverse to the best interests of the school or himself.

In respect to the amount of money coming into his hands, the variance was too great to permit a finding that all of that money had been accounted for. Unless such variance were reduced to an amount that might be laid to errors in the reports of the students or in the keeping of records and computation in the report, the amount thereof is not of great importance. It is a fact that the transactions relating to the sale of tickets and the money received therefrom should all have been a matter of such accurate and complete record that a dispute would be precluded in respect to the same. The testimony of the members of the high school who had sold tickets as to the tickets received and the money turned in was detailed and specific as to each individual. The testimony was positive. Generally speaking, the witnesses were unimpeached. Even as to those witnesses of the respondent who were subjected to a severe cross-examination, developing, in one case, an acknowledgment that 60 cents from the proceeds of the sale of tickets had not been turned in, in other cases an indefiniteness and vagueness as to the persons to whom tickets were sold, and in other cases an indefiniteness as to the amounts turned in at particular times, the evidence does not justify a reducing of the amount received by the professional employe to the amount as reported.

The testimony of appellant himself was not convincing in this respect. He traversed the statement of all of these witnesses by saying that as this money was turned over to him at various times and various places and amounts he would, at the first opportunity, enter it upon the sheet which he kept at his desk and make a record of it and put the money in a bag which he kept for that particular purpose. Instead of traversing the statements of the several witnesses as to the amounts turned over to him, he contented himself with his answer to the following question of his counsel:

"Q. Now, Mr. Vasbinder, is this report that you made to the class, is that a true account of the money you received from the students?

"A. Yes, sir, it is."

As the evidence stood when appellant undertook to traverse the testimony of these different student witness, it would seem most probable that he would have some recollection as to at least some particular instances if the amounts testified to differed from the amounts received. In any event, when he undertook of his own free will to take full charge and control of the receipts of these plays, in fact imposed it as a condition precedent to his coaching the class for the plays that he should have such custody and control, an absolute duty rested upon him to make a careful and detailed record of the transactions with each individual student and to preserve such record until a full report and settlement had been made. We do not think that the fact that the duties thus assumed were outside of the specific provisions of his contract excused him in the premises. Under all of the facts in this case, we feel that a duty rested upon the board to determine the relationship of this professional employe with the schools of their district.

We feel that counsel for the board was justified at this hearing in offering the evidence tending to support the charges upon which the hearing was had and decision rendered by the board. Notice of the character of the charges to be met appears from the letter of the board to the professional employe under date of May 14, 1937, a part of this record. The burden upon the board was to produce evidence sustaining such charges, and it was then the duty of the court to determine whether the charges were established and whether they came within the purview of the amending Act of April 6, 1937, supra.

Subsection (a) of the amended section 1205 says:

"(a) The only valid causes for termination of a contract in accordance with the provisions of this section shall be—Immorality, incompetency, intemperance,

cruelty, wilful and persistent negligence, mental derangement, persistent and wilful violation of the school laws of this Commonwealth on the part of the professional employe".

We hold that these words must be given their broad and general meaning. In the Century Dictionary & Cyclopedia we find the second definition of "immoral" to be:

"Contrary to good order or public welfare; inimical to the rights or common interests of others: a legal and commercial sense."

In Jones v. Dannenberg Co., 112 Ga. 426, 37 S. E. 729, we find the following:

". . . 'immoral' given in the Standard Dictionary is 'hostile to the welfare of the general public'. And Mr. Bouvier defines immorality to be 'that which is contra bonos mores' ".

We find the same definitions adopted in the case of Indiana Board of Pharmacy v. Haag, 184 Ind. 333.

Then follows the word "incompetency". In 31 C. J. 404, it is stated that this is a relative term without technical meaning, and may be employed as meaning disqualification, inability, incapacity, lack of ability, legal qualification or fitness to discharge the required duty. It is further defined as:

". . . want of ability suitable to the task, either as regards natural qualities or experience, or deficiency of disposition to use one's abilities and experience properly."

Turning again to the Century Dictionary & Cyclopedia, it is defined as meaning in law: ". . . lack of qualification for the performance of a legal act, or to serve a legal purpose".

We find the Federal courts have defined this word in the case of The Elton, 131 Fed. 562, where the court said:

". . . a negligent person at a position requiring care and caution is incompetent. Incompetency includes want of qualification generally".

The Appellate Court of Indiana in Biggs v. School City of Mt. Vernon, 45 Ind. App. 572, said:

" 'Incompetency' . . . is a relative term, denoting a want of the requisite qualifications for performing a given act or service."

Thus under the facts found and the conclusions of law given, the above definitions of the terms immorality and incompetency as used in the act must be held to apply in this case and justify the action of the board. In reaching these conclusions the court most emphatically limits the charges sustained to the specific construction of the words of the act above given. There is not the slightest evidence in the case to support any charge that this professional employe was guilty of immorality in respect to the most common popular meanings ascribed to that word, viz., that of being unprincipled, dissolute, or licentious. The same is true as to the charge of incompetency. There is not the slightest evidence in the case to indicate any lack of ability in his teaching of the subjects covered by his contract with his school district, viz., biology, general science, and algebra, or even his extra-curricular duties of coaching football and plays, such as the plays in question. All of the findings and conclusions of the court in this case are limited to this one particular field of the custody and control of and the accounting for the sums of monies coming into his hands under the circumstances appearing here.

The question of competency or incompetency on the part of a professional employe extends farther than his actions in the classroom. It must cover all of his relations with the students under him. They are of an impressionable age and may not safely be exposed to acts which indicate even carelessness with property rights of others. This is aside from all charges of a criminal character and is exemplified in the very foolish procedure adopted by

this professional employe in his meetings with the students of his class and their committee. If and when he discovered the records were lost, an open and frank treatment of the subject, possibly the polling of the class with a request that each one give the amount of money turned in, might have avoided all of these proceedings. Certainly it was improper for Mr. Vasbinder to meet this very natural and proper request for an accounting with a threat to have some members of the class arrested for libel, coupled, as it was, with the untruthful statement that he had had legal advice. All of this tends to show incompetency on the part of a professional employe who must stand in such intimate relations with the student body.

Needless to say, the court regrets sincerely the necessity of entering its decision in this case against the professional employe. It is only because we are thereto impelled by our view of the case, the facts found, and the conclusions of law that the following order will be made.

### Order and decree

And now, September 2, 1937, under the facts found and the conclusions of law thereon, it is ordered, adjudged, and decreed that the action of the Board of School Directors of the School District of St. Marys, of the County of Elk, State of Pennsylvania, refusing to reëlect said Charles W. Vasbinder and to renew his contract as a teacher and professional employe in the said school district for the school year of 1937-38, is affirmed, and said professional employe is therefore refused such reëlection as an employe of said school district, upon the grounds that the evidence shows immorality, of the character defined in this opinion, and incompetency on the part of such professional employe. The costs of these proceedings to be paid by appellant.

From John H. Cartwright, Ridgway.