BERESFORD COMMUNITY AMBU-LANCE SERVICE, INC., Plaintiff and ·Appellant,

v.

Susan R. MORREN, Defendant and Respondent.

No. 12342.

Supreme Court of South Dakota.

Argued June 8, 1978.

Decided Jan. 18, 1979.

Carleton R. Hoy of Davenport, Evans, Hurwitz & Smith, Sioux Falls, with Robert E. Hayes, Sioux Falls, on the brief, for plaintiff and appellant.

John T. Porter of Doyle, Bierle & Porter, Yankton, for defendant and respondent.

TICE, Jr., Circuit Judge.

This is an appeal from a jury verdict denying plaintiff recovery. The appeal is based upon a motion, characterized as a motion for directed verdict, made by plaintiff at the termination of defendant's case. It is the decision of this court that the trial court properly refused to grant plaintiff's motion.

Plaintiff was the owner of an ambulance that was proceeding on an emergency call on Highway 77. Defendant, a private individual, was driving in the same direction as the ambulance on Highway 77 in the vicinity of Union County Park. As defendant, approached the park, she slowed to make a left hand turn into what she initially thought was an entrance. At that time she turned on her directional light. She then discovered that the road she had perceived was not the entrance to the park, whereupon she increased the speed of her vehicle and proceeded toward the actual entrance. The entrance is approximately a quarter of a mile from the road onto which she had first intended to turn. During the period of time that she traversed the quarter mile, her turn indicator was on. Upon reaching the main entrance to the park, which is 125 feet wide, she again slowed and began to execute her turn. At that moment, plaintiff's ambulance was in the process of passing defendant's vehicle and the two collided, the automobile's left front bumper connecting with the ambulance's right rear bumper. Defendant's vehicle stopped almost immediately, while the ambulance proceeded to lose control and overturn. The ambulance shortly before the collision had been proceeding at a rate of speed of approximately seventy miles per hour. The emergency lights of the ambulance were on at all times. The evidence, however, is inconsistent as to when the siren of the ambulance was on. There is testimony that the siren was on continuously and other testimony that it was turned off and on after cresting the hill prior to the accident. Defendant and her passenger did not recall hearing a siren prior to the accident.

After the defense had rested its case, plaintiff made a motion for directed verdict, stating:

[T]he plaintiff moves that the Court direct a verdict in favor of the plaintiff and against the defendant in that the evidence establishes that the defendant, by her own testimony, never looked for a quarter of a mile in the rear view mirror, or prior to making a left turn on the highway; and that her negligence, as a matter of law, was established, which was the proximate cause of the impending disaster. And the plaintiff moves that the Court direct a verdict for the full amount of—well, I guess the damage question would be open to the jury, but on the question of liability.

The court thereupon denied that motion. During the course of settling instructions, a set of proposed instructions were provided to both counsel by the court. Plaintiff expressed no objection to any particular instruction other than stating,

I would not want to waive the position that I made earlier at the close of the evidence with respect to the motion that I made for a directed verdict against the defendant on the issue of liability.

Thereafter the jury denied recovery and plaintiff moved for a new trial. In the motion for a new trial, plaintiff stated, "the Court failed to grant the Plaintiff's motion for a directed verdict on the question of liability, . . . ." Defendant in her answer alleged contributory negligence on the part of plaintiff and, indeed, plaintiff states in its brief that, "The questions of contributory negligence more than slight and the amount of damage, if any, were still for the jury, . . . ."

■ The first consideration for this court is whether the trial court was properly presented with the motion for a directed verdict. Plaintiff in its brief asserts that the motion was for a directed verdict of defendant's "negligence" but not as to "liability" itself, in that it acknowledges there existed a question for the jury concerning whether plaintiff was contributorily negligent. If the motion, however characterized, was not properly raised at trial, we may not consider it upon appeal with its wording and meaning revised. *Fales v. Kaupp,* 83 S.D. 487, 161 N.W.2d 855 (1968); *Breckweg v. Knochenmus,* 81 S.D. 244, 133 N.W.2d 860 (1965). Negligence and liability are not synonymous terms in the law. The trial court was presented with a motion for directed verdict on the question of liability, not negligence. These are words of art and when a trial court is faced with a motion couched in words of art, it must make its ruling based upon the legal meaning of the terms used. As plaintiff acknowledges, the question of contributory negligence remained for the jury; therefore, the trial court had no alternative but to deny the motion as made. It must not be forgotten that it is not the function of this court to second guess the considerations the trial court was required to make in the heat of the trial. If the evidence and circumstances would reasonably justify the decision of the trial court, this court must uphold that decision. *Custer County Bd. of Ed. v. State Com'n on E. & S. Ed.,* 86 S.D. 215, 193 N.W.2d 586 (1972).

We recognize plaintiff's concern that it is undesirable to decide an issue on a technicality if justice would suggest otherwise. Although in the view of this court the appeal could be decided upon the wording of the motion as discussed above, we feel that it is appropriate to review the sufficiency of the evidence to support the trial court's denial of a directed verdict. *Baker v. Jewell,* 77 S.D. 573, 96 N.W.2d 299 (1959); E. P. Wilbur Trust Co. v. Fahrendorf, 64 S.D. 124, 265 N.W. 1 (1936).

Plaintiff's motion as stated at trial was based solely upon defendant's failure to look in the rearview mirror prior to making a left turn. While there is no specific statutory requirement that one look in the rearview mirror, it is provided by SDCL § 32–26–22 that: "The driver of any vehicle upon a highway before . . . turning from a direct line shall first see that such movement can be made in safety . . . ." It is the position of plaintiff that defendant, in her own testimony, established that she

did not look in her rearview mirror immedi- ately prior to making the lefthand turn and, therefore, did not insure that the movement could be made in safety. In her direct examination, defendant stated: "I looked in my rearview mirror and there was nothing there, and I turned. That's when I hit the ambulance." Defendant's testimony on cross-examination was somewhat ambiva- lent.*

 The testimony set out in the mar- gin indicates at the least an ambiguity con- cerning whether defendant checked her rearview mirror just before or at the time she made the turn. It is a well-established principle that if there exists any credible evidence which will reasonably support a party's claim, the trial court should deny a motion to direct a verdict against such par- ty. 75 Am.Jur.2d, Trial, § 500, pp. 510–11. It was pointed out by this court in *Barnhart v. Ahlers,* 79 S.D. 186, 189, 110 N.W.2d 125, 127 (1961), that:

Left turns are not prohibited unless they can be made in absolute safety and free from all danger. Our statute simply means that before turning on a public highway, and while turning, a motorist must exercise due care under the circum- stances to see that the turning movement can be made with reasonable safety to

himself and others who might be affected thereby. . . .

Whether defendant checked her rearview mirror and whether under the circumstanc- es she could have been expected to see a speeding vehicle in the opposite lane of travel if she did check her mirror are ques- tions for the jury. Although in *Bottum v. Herr,* 83 S.D. 542, 162 N.W.2d 880, the court was faced with the granting of a directed verdict rather than the denial, the reason- ing of that case is applicable here. The court held that if the trial court can be sustained for any reason, the ruling on the directed verdict should be upheld. Upon hearing the evidence in this case, the trial court felt that there was a disputed ques- tion of fact. There was a basis for that decision, and this court will not substitute its judgment for that of the trial court.

Judgment of the circuit court denying plaintiff's motion is hereby affirmed.

WOLLMAN, C. J., and DUNN, J., concur.

TICE, Jr., Circuit Judge, sitting for MOR- GAN, J., disqualified.

FOSHEIM and HENDERSON, JJ., not having been members of the court at the time this matter was orally argued, did not participate.

---

* Defendant testified concerning the use of the rearview mirror as follows:

QUESTION: What I'm getting at, you started the turn and then you looked?
ANSWER: No, I looked in my rearview mir- ror.
QUESTION: Well, now, the rearview mirror in the—in your car, you're telling us you looked in that before you started your turn?
ANSWER: Before, yes.
QUESTION: More than once?
ANSWER: Well, when I was at the bottom of the hill, when I went past the first exit, when I was going to that I looked in my rearview mirror and there was nothing there.
QUESTION: And you didn't look again be- tween that time and just before you turned; is that right?
ANSWER: That's correct.
* * * * * *
QUESTION: From the time that you got to the bottom of the hill until just before you turned, whatever the distance is there, three tenths of a mile or four tenths of a mile, you

never looked in your rearview mirror again till just before you turned?
ANSWER: From the bottom of the hill I never looked again until I turned in.
QUESTION: And how [far] do you say that is?
THE COURT: Just a second, is that your answer or are you just restating his question?
ANSWER: Yes, that was my answer.
BY MR. HOY:
QUESTION: How far do you say it is?
ANSWER: From the bottom of the hill to the entrance is about a quarter of a mile. From the top of the hill is about a half mile.
QUESTION: You never looked in your rear- view mirror again from the time you got to the bottom of the hill again until you made your turn; is that right?
ANSWER: No, because I never went in the left lane.
QUESTION: Well, you didn't ever look in your rearview mirror?
ANSWER: No, I didn't.