**PEARSON v. SMALL et al.**

**No. 6499.**

United States Court of Appeals for the District of Columbia.

Decided Feb. 10, 1936.

James A. Davis, of Washington, D. C. for plaintiff in error.

W. Gwynn Gardiner, James M. Earnest, and I. Irwin Bolotin, all of Washington, D. C., for defendants in error.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

MARTIN, Chief Justice.

This case was brought in the municipal court by Small and Godden to recover judgment against Pearson for a commission alleged to be due to them for services rendered as real estate agents in the sale of certain property owned by Pearson in the District of Columbia.

The claim was disputed by Pearson, the case was tried to the court without a jury, and judgment was rendered in favor of the plaintiffs for the amount claimed. Upon application of Pearson, the case was brought into this court for review.

It appears from the testimony that in September, 1933, Pearson was the owner

of three parcels of real estate located in the District, all of which were encumbered by a blanket mortgage in the sum of $27,-500 owing by Pearson to Major Caldwell, trustee, a resident of the state of Washington. Mr. Flather, a resident of the District, was acting as general agent for Caldwell in respect to the mortgage indebtedness, and authority had been given to him by Pearson to collect all the rents issuing from the property to be applied thereon.

At the trial testimony was offered by the plaintiffs to the effect that in September, 1933, they were brokers and real estate agents in the city of Washington, and that they had made sale for Pearson of a stock of drugs owned by him and located in the building in question; that at the close of this transaction they inquired of Pearson if he would sell the real estate in which the drug business was located, and Pearson told them he would sell the property, and he then employed them to find a purchaser for it; that Pearson told them that Mr. Flather had full charge of the property in question and that they should "contact" him, and that whatever price and terms were agreeable to him would be acceptable to Pearson; that thereupon plaintiffs went to Mr. Flather and communicated to him the fact that Pearson had authorized them to find a purchaser for the property, and had directed them to consult with him, and that he had full charge of the entire situation and that any price and terms for the property which might be fixed by him would be acceptable and agreeable to Pearson; that Flather then said that, if they could procure a purchaser who would give $15,000 net for the property, he would recommend the acceptance of it and would approve a sale contract therefor. Whereupon plaintiffs undertook to procure a purchaser for the property and continued their efforts from September, 1933, to July, 1934, and that during this period the defendant never revoked the authorization given them; that in the early part of July, 1934, plaintiffs advised Flather that they had a prospective purchaser for the property, one Rosenberg, who was ready, able, and willing to pay the sum of $15,750 for it; that, in order to be sure Flather was the agent of the defendant, plaintiffs telephoned defendant at this time, stating to him that they had a prospective purchaser ready, able, and willing to pay $15,750 for the property; that defendant then stated to them that Flather was still in charge of the property, and that any price and terms as fixed by him would be acceptable and agreeable to defendant; that plaintiffs consulted with Flather as to price and terms, and as to the amount of commission to be paid plaintiffs; that Flather stated to them that he would recommend and approve a price of $15,750 of which $5,750 should be payable in cash and the balance of $10,000 to be secured by first deed of trust on the property, with commissions of $750 payable to plaintiffs; that the property was to be sold subject to a lease in favor of one Eisenberg for five years; that this price and these terms were fixed by Flather; that thereupon the plaintiffs drew up the sales contract and advised defendant that they had found a purchaser ready, willing, and able to pay $15,750 for the property; that they had taken up the matter with Flather, who had approved the price and terms, and that they desired certain information regarding a lease on the property in favor of Eisenberg; that the defendant then advised them to consult with Flather as to the leasing, and said that Flather would give them the necessary information in regard to the same so that they could draw up the sales contract; that they saw Flather about the lease and secured the information from him; that the contract of sale was thereupon drawn and signed by Rosenberg, the purchaser, and the contract was then submitted to Flather for his approval; that in the first draft of the contract it was provided that the first trust should bear interest at the rate of 5½ per cent., but Flather insisted that the rate should be 6 per cent., whereupon a change was made in the contract by Rosenberg accordingly; that the contract was again submitted to Flather, who approved it and directed the plaintiffs to present it to defendant for his signature, stating that he would telephone the defendant to apprise him of the fact that he had approved of the contract; that he had called the defendant on the telephone and had discussed it with him; that defendant inquired of him if he had to sell the property, and that he (Flather) advised defendant that he did not have to sell the property, but that he (Flather) thought that $15,000 net was a fair and good price for the property, and that he had approved the contract; that the contract was submitted to the defendant, who said that he wished to take it home with him for consideration; that on

the next day the defendant informed plaintiffs that he was not interested in the contract and would not sign it; that plaintiffs then said to defendant if there was anything wrong with the price or terms mentioned in the contract the purchaser would pay the entire price in cash, but defendant still declined to sign the contract. The testimony furthermore disclosed that the purchaser found by the plaintiffs was still ready, able, and willing to buy the property either on the terms of the contract or cash. Plaintiffs demanded that defendant pay them the sum of $750, as the commission due them for their services, but defendant refused to pay the same.

The evidence in behalf of the defendant was confined to testimony given by the defendant himself, who testified in substance that in September, 1933, the plaintiffs inquired if he wanted to sell the real estate in question; that he stated to the plaintiff Small that he was desirous of selling it; that he directed the plaintiffs to consult with Mr. Flather about the matter; that he never employed plaintiffs to sell said real estate or to represent him; that he did not appoint Flather as his agent or authorize Flather to represent him in the sale of the real estate; that, because of the fact that Flather's client held the blanket trust for $27,500 on the property which expired in 1935 and because the rentals for the property were being collected by Flather and applied by him to the interest and charges due to Caldwell on the notes held by him, any price fixed as to the sale price of the property would have to be discussed with, and approved by, the holder of the blanket trust; that Pearson advised plaintiffs to discuss the matter with Flather; that he never told plaintiffs that he would accept any price fixed by Flather on the real estate; that Flather was not authorized to act for him in fixing the price and terms of sale of the property. He admitted receiving a telephone call from the plaintiff Small in July, 1934, at which time plaintiff Small stated to defendant that he had found a purchaser ready, willing, and able to buy the property in question for the price of $15,750; that he told plaintiffs to consult with Flather, as he still had charge of the entire situation; that plaintiff Small at about the same time had called him with respect to a lease on the property, stating that he needed this information in order to properly draw the contract of sale, and he told him to consult with Flather,

stating Flather would give him the necessary information; that defendant refused to sign the contract submitted to him by plaintiff Small; that from the time he stated to the plaintiffs that he was desirous of selling the property in question down to the time that the sale contract was signed by the prospective purchaser on July 27, 1934, "he never retracted his offer to the co-plaintiffs to sell the said property." Upon this testimony the lower court found in favor of the plaintiffs.

■ The plaintiff in error charges that the trial court erred in admitting evidence of the employment of plaintiffs by defendant in September, 1933, to sell his drug business. The trial court held "that such evidence was admissible to show how the parties, plaintiff and defendant, came together." This ruling was not erroneous.

■ It is also charged that the trial court erred in admitting in evidence the acts and declarations of W. J. Flather, and in finding and ruling that Flather was the agent of defendant as alleged in the declaration. There was evidence in the record that the defendant had stated to the plaintiffs that Flather was acting for him in the transaction; the court therefore was justified in admitting the evidence relating to Flather's conduct and in holding that "all the facts and circumstances showing the relation of the parties and their treatment of each other, and throwing light upon the character of such relationship are admissible in evidence."

■ Plaintiff in error also charges that the proposed contract of sale set up in the declaration was in conflict with, and contrary to, section 522 of the Code of the District of Columbia 1924 (D.C.Code 1929, T. 25, § 193), and contrary to public policy. This assignment clearly mistakes the import of the contract, which certainly was not contrary to the statute nor to public policy. The property in question was subject to a mortgage which the defendant (the debtor) was unable to pay. The proposed sale in which the creditor was to participate was obviously in good faith without fraud or deception to the creditor, and was not in any sense contrary either to the statute or public policy.

■ The plaintiff in error also charges that the evidence submitted at the trial did not tend to support the plaintiffs' claim that they had been employed by defendant as his agents to sell the property for him.

We think that the testimony is sufficient to sustain the court's finding. If the plaintiffs procured a purchaser for defendant's property in execution of a contract between the parties, they would be entitled to their compensation, notwithstanding that defendant afterwards refused to complete the sale.

We have examined the other charges of error assigned by the plaintiff in error, but none of them is sustained by the record. The trial court, after hearing all the evidence, sustained the claim of the plaintiffs, and we see no ground for disturbing its decision.

The judgment of the municipal court is affirmed, with costs.