**HARRIS v. YOUNG.**

No. 1167.

Municipal Court of Appeals
District of Columbia.

Argued Jan. 14, 1952.

Decided Feb. 8, 1952.

Ben Lindas, Washington, D. C., (Joseph H. Schneider, Washington, D. C., on the brief), for appellant.

Earl J. Lombard, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Judges.

CAYTON, Chief Judge.

A broker sued and recovered judgment for a commission on the sale of a rooming house business. Defendant owner has appealed.

Appellant Harris owned a building in which he operated a rooming house business. Desiring to sell the business he gave a written listing agreement to the broker

Young. Therein it was provided among other things that the sale price was to be $5500, that a monthly rental of $150 was to be payable to Harris by the purchaser of the business, and that the equipment included "eight all new refrigerators."

Acting under the authority of the listing agreement the broker obtained a purchaser, Fricke, who signed an agreement to buy the business, and this agreement the owner immediately ratified and accepted. The trial judge in a written opinion found that at the time appointed for settlement, the buyer Fricke tendered the purchase money and was at all times ready, able and willing to complete the contract according to its terms, but that the owner refused. These findings are supported by the uncontradicted evidence.

The ground stated by the owner for his refusal to proceed with the sale was that in approving a monthly rent ceiling of $150 (after the execution of the sales contract), the Rent Administrator included in the minimum service standard eight stoves and refrigerators. It is appellant's contention here, as it was in the trial court, that he could not comply with that standard and furnish the stoves and refrigerators because he had already bargained to sell them to Fricke. We see no merit in this contention. The vendor in his listing agreement represented that the rental was $150, and the same rental was named in the sales contract, whereas the maximum rent ceiling then on the property was only $75. It was afterwards that he secured approval of a ceiling of $150 on the theory that the premises had been changed to such an extent as to constitute new housing accommodations.

■ We think the trial judge correctly ruled "that it was the duty of the defendant as the landlord to procure the rent ceiling upon the property which would conform to the contract of sale. In other words, the defendant should have put the Rent Administrator on notice, in his application for the rent increase, or in some manner, that the stoves and refrigerators were not to be included in the minimum service standard." To this we would add that the defendant should also have put the broker or purchaser or both of them on notice that in the proceedings before the Rent Administrator the stoves and refrigerators would be listed as part of the equipment in the building. But there was no evidence that he gave any such notice or indeed that he told either the purchaser or the broker of any pending or proposed proceedings before the Administrator. Thus he was in the position of having withheld, or at least failed to disclose, important information concerning the subject matter of the sale.

Another contention of the owner was that the broker could not recover his commission for the reason that (because of the stove and refrigerator situation) the contract between the owner and buyer was violative of the Rent Act, D.C.Code 1940, § 45–1601 et seq., and unenforceable. This contention was partially answered by the trial judge in the language we have quoted from his opinion. Perhaps a more conclusive answer would be that if there was any "illegality," it was attributable to the vendor himself. He had contracted that the stoves and refrigerators were to be a part of the sale to Fricke and then refused to complete the sale when he found that under the Rent Administrator's ruling they would have to be included as a part of the housing accommodations, to justify a $150 rent ceiling.

■ Still another answer is that even if we could assume that illegality developed out of the contract between the owner and purchaser, the broker was not a party to such illegality and did not act with knowledge that such existed. That being so, the broker's right to commission was unimpaired. Tanenbaum v. Remford Corporation, 185 Misc. 612, 57 N.Y.S.2d 415; Shulman v. Kaplan, 96 Conn. 303, 114 A. 116.

The situation seems to be generally governed by the same principle we applied (though on somewhat differing facts) in Borzillo v. Thompson, D.C.Mun.App., 57 A.2d 195. There we held that where a vendor had represented that an apartment in a building rented for $150 per month when the ceiling was actually $60, and the purchaser for that reason refused to complete the deal, the broker was nevertheless

entitled to his commission. The basis of that decision as of others like it was that a broker is considered to have performed his agreement with a vendor when he produces a purchaser who is ready, able and willing to buy on the terms the vendor has prescribed, and that the broker's right to commission cannot then be defeated by the vendor's fault, any more than by his refusal to complete the transaction. Shinn v. Evans, 37 App.D.C. 304; Pearson v. Small, 65 App.D.C. 243, 82 F.2d 849; Pratt v. Realty Associates, D.C.Mun.App., 45 A.2d 478.

Affirmed.